701 A.2d 726

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. KEITH NELSON, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted September 23, 1997—Decided October 21, 1997.

Before Judges DREIER, KEEFE and PAUL G. LEVY.

*Ivelisse Torres*, Public Defender, attorney for appellant (*M. Virginia Barta*, Assistant Deputy Public Defender, of counsel and on the brief).

*Robert W. Gluck*, Middlesex County Prosecutor, attorney for respondent (*Simon Louis Rosenbach*, Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

PAUL G. LEVY, J.A.D.

Defendant was convicted of armed robbery (*N.J.S.A.* 2C:15–1) and sentenced to a term of twenty years with ten years parole ineligibility. At trial, after several hours of deliberation, the jury returned a note to the trial judge indicating they were deadlocked.

While giving only a modified "*Allen* charge," permitted by the Supreme Court in *State v. Czachor*, 82 *N.J.* 392, 413 *A.2d* 593 (1980), the trial judge also essentially told the jury he would declare a mistrial if they did not reach a verdict within forty-five minutes. The judge sent the jury back to deliberate, and they reached a guilty verdict forty-eight minutes later. Because the instructions had the clear capacity to alter the deliberation process and ultimately result in a guilty verdict, we conclude they constituted plain error and reverse and remand for a new trial.

On June 29, 1993, Thomas Bello was working at the Hill's Ice Cream Store in Edison. Defendant and another man, described by Bello as "thin black youths ... around 17 or 18 years-old," entered the store and requested two hot dogs. When Bello told them they did not have enough money for the hot dogs, one man left to find additional money. He returned, and although they still did not have enough money, Bello sold them the food and they left.

Approximately ten minutes later, Bello was in the back of the store when he heard a bell indicating the store's front door had opened. Defendant and his companion walked behind the counter and Bello came out from the back of the store and told them they could not go behind the counter. In response, they told him to "stay back, this has nothing to do with [you]." Bello said that defendant held his hand in his pants and gestured as though he had a weapon in his pocket. The two men opened the cash drawer, took approximately $300 and fled. Bello called the police and officers arrived within five minutes. Eventually the police arrested defendant, he was indicted and the trial ensued.

When the trial concluded, the jury was sent to begin deliberations. The next day, the jury continued its deliberations in the morning. Later in the day, at approximately 2:16 p.m., the jury sent the following note to the judge:

> Judge, we are deadlocked on two of the three counts. We are all agreed on one count only. One of the jurors feels he does not have to argue his point to the rest of us. Please advise at this point what we should do.

In response, the judge advised the jury:

> First of all, I would presume, I have to assume that since this is a one-count indictment, that the count that you've already decided on is Count 1, the armed

robbery, first degree. I would have to assume in accordance with my instructions to this jury that you ladies and gentlemen have decided on a not guilty verdict on that charge and that you're now considering the two remaining lesser-included which are the robbery and/or fourth degree theft. I have to assume that. I don't know, and I'm not asking.

But it would be the only way that this note would make sense because there is only one count here and that's the armed robbery. The other two are lesser-included. And if you have found him guilty on the armed robbery, then you never have to discuss the robbery or the theft. If you find him not guilty of the armed robbery, then you deal with the robbery and you deal with the theft, those two remaining charges.

I am debating whether I should declare a mistrial and send you home or whether I should send you back to do some further deliberating.

I would at this point remind you of my charge to you that said that all jurors should listen to the arguments of every other juror and that all jurors should, if they don't do any violence to their own sense of justice and their own moral principles, obviously, should consider changing their minds if they are shown to be wrong in their assumptions or in their arguments.

I am somewhat concerned that there may be one juror who is just not arguing nor giving the benefit of his views to the other jurors. That doesn't mean that juror should give up his position. That doesn't mean that at all. But at least there should be some discussion. This makes it sound like it's a situation where someone is not willing to discuss their position, and certainly that doesn't gain us anything. Every juror should be free to argue their position, whatever that position is, and every other juror should listen very carefully to every other juror's viewpoint, and perhaps after such communication you might move to a resolution of this matter.

I am going to send you back to deliberate for a little bit longer. We don't have that much longer, at least maybe another forty-five minutes or so. And if you're still deadlocked at the end of that period, then I will bring you back in, and I will probably declare a mistrial and the matter will have to be tried over.

But at least let's give it another shot. Perhaps another forty-five minutes will do it. If not, then we'll bring you back in about forty-five minutes and excuse you for the day, excuse you from service on the jury obviously.

All right, let's take them back in for further deliberations.

At 2:21 p.m., the jury went to deliberate, and approximately 48 minutes later, at 3:09 p.m., the jury returned with a unanimous verdict of guilty of armed robbery.

On appeal, defendant contends the supplemental instructions to the jury after the deadlock was announced were unduly coercive on the disagreeing juror and deprived defendant of a fair trial. As stated, we at least partially agree with that contention and reverse and remand for a new trial. Defendant further contends

that the use of excluded evidence in the prosecutor's summation, referring to Barry Nelson, was prosecutorial misconduct depriving defendant of a fair trial. We also agree that the prosecutor should not have made that comment. However, since we reverse due to the supplemental charge, we need not decide the prejudicial effect of the comment, and we need not consider defendant's other contentions on appeal concerning his sentence.

■ Defendant asserts he was denied a fair trial because the judge's supplemental jury instructions were unduly coercive. While in *Allen v. United States,* 164 *U.S.* 492, 17 *S.Ct.* 154, 41 *L.Ed.* 528 (1896), the United States Supreme Court upheld the use of instructions urging a jury to reach a unanimous verdict by considering all jurors' viewpoints, the New Jersey Supreme Court rejected the use of an *"Allen* charge" in *State v. Czachor,* 82 *N.J.* 392, 413 *A.*2d 593 (1980). In that case, Justice Handler explained that "the so-called *Allen* charge, as commonly applied and as presently formulated, does have unacceptable coercive effects upon jury deliberations and its use can no longer be sanctioned in criminal trials in this State." *Id.* at 394, 413 *A.*2d 593. This is because

> the typical *Allen* charge does not simply remind jurors of their duty to cooperate in collective deliberations.... The charge is intended to undo a jury deadlock. It tends therefore to focus upon possibly the weakest links in the chain locking the jury in disagreement, namely the minority holdouts on the jury. Hence, the charge usually admonishes specifically and pointedly only those in the minority to reconsider their beliefs in light of the adverse position held by the majority. It also exerts pressures upon jurors by casting indirectly upon them a personal responsibility and sense of guilt for the impasse.... Even if the *Allen* charge may not in fact be coercive in a particular fact situation, at best it injects a temptation to the jury to settle for majority rule rather than the impartial individual determination of each juror.
>
> [*Id.* at 398–99, 413 *A.*2d 593 (citation omitted).]

■ It was appropriate here for the trial judge to advise the jurors to continue deliberations when they first reported an impasse. *State v. Czachor, supra,* 82 *N.J.* at 405, 413 *A.*2d 593. However, it is inappropriate to "undo a jury deadlock" by "focus[ing] upon possibly the weakest links in the chain locking the jury in disagreement, namely, the minority holdouts on the jury."

*Id.* at 398, 413 *A.*2d 593. The trial judge's supplemental instructions to the jury focused on "one juror who is just not arguing nor giving the benefit of his views to the other jurors." Directing attention to one juror is not, *per se,* improper. *See State v. Hightower,* 146 *N.J.* 239, 680 *A.*2d 649 (1996); *State v. Singleton,* 290 *N.J.Super.* 336, 675 *A.*2d 1143 (App.Div.1996). Requesting the juror to discuss the matter with the entire panel was reasonable under these circumstances, but it was coercive to state further that the jury would only have forty-five minutes to deliberate.

 Upon completion of the supplemental charge, the jury was sent to deliberate and returned with a verdict forty-eight minutes later. We reject the State's claim that this is a "coincidence, and not a result of the court's remarks." "A trial court is permitted to require a jury to deliberate for a reasonable length of time before declaring a deadlock," and "[w]hat constitutes a reasonable amount of time is influenced by the length of the trial and the complexity of the ... issues." *State v. Hightower, supra,* 146 *N.J.* at 258, 680 *A.*2d 649. The imposition of a forty-five minute deadline before the judge would declare a mistrial, and the delivery of a verdict within that time frame is certainly more than coincidence. It is plain error.

The forty-five minute time restriction had a clear capacity to impede the deliberation process, especially upon the minority juror, and may have led the jury to a result it otherwise might not have reached. As we have said before, "[a] verdict of eleven jurors, with the vote of the twelfth coerced rather than convinced, is no verdict at all." *State v. Vergilio,* 261 *N.J.Super.* 648, 619 *A.*2d 671 (App.Div.), *certif. denied,* 133 *N.J.* 443, 627 *A.*2d 1147 (1993). Therefore we reverse the verdict and remand for a new trial.

 Defendant's second point deserves some attention so the error is not repeated at retrial. There were two participants in the robbery. During Detective Buck's direct examination, the prosecutor asked him if an individual named Barry Nelson was a

suspect in the incident at the ice cream shop. Defense counsel objected and the judge sustained the objection. Nonetheless, during summation, the prosecutor inserted Barry Nelson's name into a discussion of accomplice liability. Defendant asserts this use of excluded evidence by the prosecutor constituted reversible error as prosecutorial misconduct.

Defense counsel did not object to the use of Barry Nelson's name during the summation; instead he waited until the completion of the trial and moved for a new trial, based in part on the prosecutor's summation. "A failure to make a timely objection to a prosecutor's remarks, shows that 'in the atmosphere of the trial the defense did not believe that the prosecutor's remarks were prejudicial.'" *State v. Bauman*, 298 *N.J.Super.* 176, 207, 689 *A.*2d 173 (App.Div.), *certif. denied*, 150 *N.J.* 25, 695 *A.*2d 668 (1997) (citation omitted). This court noted in *Bauman*, "the general reluctance of counsel to object during a summation, yet recognize[d] that an objection immediately following summation does permit curative action by the judge. Silence on the part of counsel and a subsequent motion for a new trial cannot be condoned." *Ibid.*

While not amounting to prosecutorial error, mention of the name Barry Nelson in summation after the judge had excluded evidence of any connection to Barry Nelson was improper. It may have affected the verdict, but with more care at the retrial, this error need not be repeated.

Reversed and remanded for a new trial.