851 A.2d 53 (2004)
370 N.J. Super. 224
STATE of New Jersey, Plaintiff-Respondent,
v.
Bruce R. TARLOWE, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued May 12, 2004.
Decided June 24, 2004.
*55 Steven G. Sanders, Secaucus, argued the cause for appellant (Arseneault, Fassett & Mariano, attorneys; Mr. Sanders of counsel and on the brief).
Russell J. Curley, Deputy Attorney General, argued the cause for respondent (Peter C. Harvey, Attorney General of New Jersey, attorney; Mr. Curley, of counsel and on the brief).
Before Judges CUFF, WINKELSTEIN and LARIO.
*54 The opinion of the court was delivered by LARIO, J.A.D.
On November 7, 2002, under state indictment 00-04-00062-S, a jury found defendant, *56 Bruce Tarlowe, guilty of second-degree health care claims fraud, in violation of N.J.S.A. 2C:21-4.3c (count one); and third-degree theft by deception, in violation of N.J.S.A. 2C:20-4 (count two). On February 14, 2003, Judge Heimlich sentenced defendant to a term of three years imprisonment (appropriate for a crime one degree lower than the second-degree crime for which defendant was convicted, pursuant to N.J.S.A. 2C:44-1f(2)) under count one, concurrent with a term of three years imprisonment under count two. A fine of $1000, a Violent Crime Compensation Board penalty of $100, a Safe Neighborhood Service Fund assessment of $150, and a Law Enforcement Officers' Protection Act assessment of $30 were imposed, and defendant was ordered to pay restitution in the amount of $2,724.83. Defendant appeals his convictions and sentence, raising the following issues:

POINT I: THE SECOND-DEGREE CONVICTION SHOULD BE REVERSED, AND THE CHARGE DISMISSED, BECAUSE TARLOWE'S ALLEGED CONDUCT DOES NOT ESTABLISH A VIOLATION OF THE HEALTH CARE CLAIMS FRAUD ACT AS A MATTER OF LAW.
A. The proof at trial established conduct that is beyond the reach of the Act as a matter of law.
B. Applying the Health Care Claims Fraud Act to Tarlowe's alleged conduct violates his due process right to fair notice of what conduct is proscribed by criminal statutes.
C. Count one does not allege, and the jury instructions failed to require the jury to find specific intent to deceive. (Not raised below.)[*]

POINT II: BOTH CONVICTIONS SHOULD BE VACATED BECAUSE THE TRIAL COURT ABUSED ITS DISCRETION AND DEPRIVED DEFENDANT OF HIS RIGHT TO A FAIR TRIAL WHEN IT PRECLUDED DR. SEMEL FROM VIEWING THE VIDEOTAPE AND TESTIFYING THAT TARLOWE'S BIZARRE ACTIONS JUST PRIOR TO THE ACCIDENT WERE SYMPTOMATIC OF HIS MEDICAL AND PSYCHOLOGICAL AILMENTS.

POINT III: BOTH CONVICTIONS SHOULD BE VACATED BECAUSE THE LAW DIVISION COMMITTED REVERSIBLE ERROR WHEN IT ADMITTED THE TIME-LAPSE VIDEOTAPE INTO EVIDENCE.
A. The time-lapse recording methodology rendered the videotape unreliable as a matter of law.
B. The Law Division plainly erred when it admitted the videotape without requiring the state to lay a proper foundation at trial under N.J.R.E. 901. (Not raised below.)

POINT IV: THE THIRD-DEGREE CONVICTION SHOULD BE VACATED BECAUSE THE LAW DIVISION COMMITTED PLAIN ERROR WHEN IT AMENDED THE INDICTMENT AND FAILED TO INSTRUCT THE JURY ON AN ESSENTIAL ELEMENT OF ATTEMPTED THEFT BY DECEPTION. (Not raised below.)

POINT V: BOTH CONVICTIONS SHOULD BE VACATED BECAUSE TWO OTHER ERRORS, STANDING ALONE OR CONSIDERED IN LIGHT OF THE ERRORS, SET FORTH ABOVE, DEPRIVED TARLOWE *57 OF HIS RIGHT TO A FAIR TRIAL AND REQUIRE REVERSAL.
A. The prosecutor engaged in prejudicial misconduct when she violated the Law Division's just-issued 404(b) ruling in her opening statement. (Not raised below.)
B. The Law Division inappropriately coerced a verdict by telling jurors that they would have to continue their deliberations six days later unless they reached a verdict that evening. (Not raised below.)
We affirm.
On Easter Sunday, April 12, 1998, at approximately 8:30 a.m., defendant, fifty-seven years old, was shopping in the A & P Supermarket located on Galloping Hill Road in Union Township. The pertinent facts were recorded on a time-lapse surveillance camera's videotape. Defendant was observed in the store's produce aisle when a head of lettuce fell from the produce bin onto the floor. Defendant picked up the head of lettuce but left a lettuce leaf on the corner of the non-skid floor mat that was next to the produce bin. Defendant placed the head of lettuce back in the bin and continued to shop in the produce aisle. Shortly thereafter, defendant returned to the area where the lettuce leaf was located and kicked the leaf off the mat and onto the tile floor. Defendant hovered in the vicinity of the lettuce leaf, and then suddenly stepped on the leaf and fell to the floor, striking his left arm and shoulder. Defendant remained sitting on the floor, looking around and holding his left arm. The store manager, who noticed the lettuce leaf and spoke with defendant, eventually assisted him up from the floor. Defendant claimed that he was hurt. He left the store unassisted, after refusing the manager's offer to call an ambulance.
Defendant drove himself to the emergency room of Union Memorial Hospital and advised the emergency room doctors that he had slipped on a piece of lettuce. Based upon his history, defendant was diagnosed as sustaining sprains of his left shoulder, cervical spine, and left elbow as a result of his fall. Thereafter, defendant obtained medical treatment and physical therapy from various doctors. When asked for a history of the injuries about which he complained, defendant told his doctors that he slipped and fell on a piece of lettuce.
Defendant, a licensed insurance broker, and the owner of The Tarlowe Agency, had obtained, through his agency, a health insurance policy with United States Life Insurance Company ("U.S.Life"). The policy was in effect at the time of defendant's fall. Defendant submitted nineteen claims, totaling approximately $5400, to U.S. Life for medical treatments that he received on account of his fall. All of the submitted claims indicated that defendant's injuries resulted from an accidental slip-and-fall. U.S. Life paid $2,724.83 to defendant's medical providers. These payments were made before U.S. Life obtained a copy of the A & P's surveillance videotape. Roberta Ferlita, a fraud investigator and former claims technician employed by U.S. Life, testified that U.S. Life would not have paid the nineteen claims submitted on behalf of defendant had it known that defendant staged the slip-and-fall, even if he sustained injuries as a result of the fall. Ferlita testified that defendant's health insurance policy contained an exclusion that precluded payment of a claim that was the product of a fraudulent slip-and-fall accident. At that point, the trial judge instructed the jurors that it was within the province of the jury alone to determine whether defendant staged his slip-and-fall accident.
Defendant's civil attorney testified that defendant met with him to discuss his fall. *58 Defendant told him that he was injured when he fell on a lettuce leaf in the produce aisle of the A & P. When it became evident that A & P was not going to settle defendant's claim, the attorney filed a complaint on defendant's behalf against A & P alleging business invitee negligence. In the course of discovery, defendant's attorney received and reviewed the surveillance tape, after which he determined that the civil suit would not be successful. The attorney filed a stipulation of dismissal.

I
At various stages between the return of the indictment and prior to trial, defendant moved before the trial court for dismissal of count one of the indictment. Defendant first argued that he did not make or cause to be made a "misleading statement of material fact" in the claim forms submitted to U.S. Life because he was in fact injured and had received treatment for his injuries. On October 23, 2000, Judge Triarsi denied the motion, ruling that the State had submitted prima facie evidence of material facts before the Grand Jury that U.S. Life would not have paid the claims had it known that defendant staged his slip-and-fall, thus coming within the ambit of N.J.S.A. 2C:21-4.3c.
Defendant next moved for a dismissal of count one of the indictment on the ground that the Health Care Claims Fraud Act ("the Act") was unconstitutionally vague because it did not provide defendant adequate notice that his conduct constituted a criminal act. This motion was denied, Judge Triarsi holding that "people are on notice that if, indeed, they have posed themselves in a false accident, if that's true, they have notice they can't submit bills for treatment for that fall [or] accident to an insurance company under the law today." On October 4, 2002, Judge Heimlich, after argument, denied defendant's motion for reconsideration of the prior orders denying defendant's motions to dismiss count one of the indictment.
On appeal, defendant argues that the trial court erred in denying his motions for dismissal of count one of the indictment because the conduct alleged and proved by the State exceeded the scope of the Act as a matter of law. The issue presented is whether the Act permits a defendant to be charged with health care claims fraud even though the injuries sustained in his staged slip-and-fall were allegedly legitimate. Our analysis of this argument focuses upon N.J.S.A. 2C:21-4.3c, the statute with which defendant was charged, that provides in pertinent part:
A person, who is not a practitioner subject to the provisions of subsection a. or b. of this section, is guilty of a crime of the second degree if that person knowingly commits five or more acts of health care claims fraud and the aggregate pecuniary benefit obtained or sought to be obtained is at least $1000.
"Health care claims fraud" is defined as
making, or causing to be made, a false, fictitious, fraudulent, or misleading statement of material fact in, or omitting a material fact from, or causing a material fact to be omitted from, any record, bill, claim or other document, in writing, electronically or in any other form, that a person attempts to submit, submits, causes to be submitted, or attempts to cause to be submitted for payment or reimbursement for health care services.
[ N.J.S.A. 2C:21-4.2.]
"Where statutory language is clear and unambiguous, it is our duty to enforce it as written." State v. Moore, 358 N.J.Super. 241, 247, 817 A.2d 419 (App.Div.2003). The plain meaning of the Act is clear and therefore we do not have to look beyond its literal terms in order to determine its *59 intent and application. See State v. P.L., 369 N.J.Super. 291, 293, 848 A.2d 861 (App.Div.2004). Clearly, the Act encompasses a person who knowingly makes "a false, fictitious, fraudulent, or misleading statement of material fact in, or omit[s] a material fact from, or caus[es] a material fact to be omitted from, any ... claim... that a person attempts to submit, submits, causes to be submitted, or attempts to cause to be submitted for payment or reimbursement for health care services." N.J.S.A. 2C:21-4.2. Defendant emphasizes that his injuries were legitimately the result of his slip-and-fall. He fails to consider the material issue of whether his fall, and not the consequential injuries therefrom, was accidental or intended. An accident is "[a]n unintended and unforeseen injurious occurrence." Black's Law Dictionary 15 (7th ed.1999); see Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Estate of Miller, 185 N.J.Super. 183, 188, 447 A.2d 1344 (App.Div.1982), wherein we defined accident, in pertinent part, quoting from Webster's Third New International Dictionary 11 (1971): "an unexpected happening causing loss or injury which is not due to any fault or misconduct on the part of the person injured...." Therefore, a fall that allegedly was intended is not an "accidental" fall.
Defendant's submission of nineteen claims to U.S. Life for injuries alleged to be the result of an accidental slip-and-fall raises the question of accident or intentional slip-and-fall. If the fall, regardless of its injury-induced consequences, was not accidental, then defendant's actions squarely fit within the provision of N.J.S.A. 2C:21-4.2 and -4.3c, and constitute a violation of the Act.
Defendant's claim that the Act is unconstitutionally vague, because it failed to provide him with fair notice that his conduct was illegal, is without merit. The applicable statutory provisions clearly prohibit defendant's conduct of knowingly submitting nineteen fraudulent claims for treatment of injuries allegedly sustained in a feigned accident. Equally meritless is defendant's claim, raised for the first time on appeal, that his conviction must be reversed because neither the indictment nor the jury's instructions contained the essential element of a fraud claim, i.e., a specific intent to deceive. N.J.S.A. 2C:21-4.3c prescribed "knowingly" as the requirement of culpability for the commission of second-degree health care fraud. Accordingly, both the indictment and the court's charge correctly contained the requisite element of "knowingly" as the requirement of culpability to be proven beyond a reasonable doubt in order to convict defendant under the Act. A specific intent to deceive is not a required element of a violation of N.J.S.A. 2C:21-4.3c.

II
Defendant contends that the judge erred in precluding Dr. Charles Semel, defendant's expert psychiatrist, from viewing the surveillance videotape during his testimony in order to point out to the jury how defendant's strange behavior just prior to the fall, as depicted on the videotape, was symptomatic of his medical and psychiatric illnesses, and thus would permit the jury to infer that defendant's slip-and-fall was not feigned but genuine. The trial judge conducted a N.J.R.E. 104 hearing and determined that Semel could testify that "defendant has a diminished capacity to form the appropriate purposeful intent." However, the judge ruled:
[T]he court will not permit the doctor to talk about his opinions concerning what he observes on the videotape. That is a decision for the jury to make, not for the doctor to give an opinion concerning the videotape and his opinions *60 as to whether [defendant] planned or did not plan the slip-and-fall.
But [Dr. Semel] may talk about his medical history and talk about whatever his medical condition is that relates to his having a diminished capacity to form a knowledgeable and purposeful intent to commit acts on that particular day....
[Dr. Semel] may address the areas of seizure and balance, but you may not give an opinion concerning what is on that videotape and whether he did in fact slip and fall or not.
Although Semel was precluded from looking at the videotape with the jury during the course of his testimony, he was able to explain to the jury in detail how defendant's syncopal episodes, seizure disorder, circulatory problems to the brain, and cardiovascular disease made defendant susceptible to falling. Semel testified that defendant had a history of prior falls. In Semel's opinion, defendant's psychomotor epilepsy caused defendant to appear confused, walk in circles, look at and touch things repetitively without remembering, and act in a random, unfocused, illogical and non-goal orientated manner.
Pursuant to N.J.R.E. 704, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Semel properly was precluded from opining that the slip-and-fall was not staged. However, it was error to prevent his viewing of the videotape with the jury while he explained defendant's strange behavior prior to his fall as symptomatic of defendant's medical and psychiatric illness. Nevertheless, we do not regard the court's preclusion of Semel's testimony while viewing the videotape with the jury to have been clearly capable of producing an unjust result. R. 2:10-2. The jury had the opportunity to evaluate Semel's testimony and to compare it with defendant's actions as demonstrated on the videotape. If the jurors accepted Semel's testimony as explanatory of defendant's actions observed on the videotape, they could reasonably infer that defendant's fall was caused by his illness and not by his chicanery.

III
Defendant contends that the judge erred in admitting into evidence the surveillance videotape of his fall because the time-lapse methodology that was utilized rendered the videotape unreliable. The trial judge found that the time-lapse videotape of defendant's activities in the produce aisle "did not distort time." Additionally, the court found the videotape to be "a faithful depiction of the time event" and it was "an item which would be very beneficial for the jury to review and the jury would be capable of deciding its effect and the weight to be given to it at trial."
There was sufficient credible evidence to support the court's finding that the videotape was relevant and not time-distorted. We will not disturb the sound determination of the trial judge. State v. Locurto, 157 N.J. 463, 470-471, 724 A.2d 234 (1999).
Defendant's contention, raised for the first time on appeal, that the court erred in admitting the videotape, because the State failed to lay the proper foundation from which the jury could assess the videotape's authenticity, is without merit. Defendant stipulated to the videotape's admission into evidence prior to trial. Therefore, the State was not required to present any evidence to authenticate the videotape prior to showing it to the jury. See State v. Thomas, 132 N.J. 247, 257, 624 A.2d 975 (1993); State v. Loftin, 287 N.J.Super. 76, 96, 670 A.2d 557 (App.Div.), certif. denied, 144 N.J. 175, 675 A.2d 1123 *61 (1996). We note that defense counsel utilized the videotape to support his proposition that defendant's medical condition caused him to fall. Defendant cannot now be heard to complain. See State v. Harper, 128 N.J.Super. 270, 277, 319 A.2d 771 (App.Div.), certif. denied, 65 N.J. 574, 325 A.2d 708 (1974).

IV
Again for the first time on appeal, defendant argues that his conviction on count two should be vacated because the judge erred when he amended count two to charge theft by deception, as opposed to attempted theft by deception. Although the heading of count two of the indictment stated, "Attempted Theft by Deception Third Degree," the body of count two charged defendant with attempted theft by deception and theft by deception, stating in relevant part: "[Defendant] ... purposely did attempt to obtain approximately $5730 and did obtain approximately $3002 from the United States Life Insurance Company, by creating or reinforcing the false impression that a `slip and fall' accident had occurred...."
During the charge conference, the judge asked counsel whether they wanted him to charge the jury on attempted theft, noting that it might confuse the jury. Neither counsel was opposed to the court charging only theft by deception. The court instructed the jury on theft by deception and the verdict sheet inquired whether defendant committed the crime of theft by deception. Defense counsel did not object to the jury charge or the jury verdict sheet.
As the indictment charged the crime of theft by deception, the court merely eliminated one of the crimes alleged, thus presenting a less complex charge for the jury's determination. The jury was appropriately instructed on the theory of liability advanced in support of defendant's conviction of theft by deception. See State v. Schmidt, 110 N.J. 258, 261, 540 A.2d 1256 (1988). We are satisfied that the amendment of count two was not an error, and certainly not plain error. R. 2:10-2. We note that the judgment of conviction incorrectly states that defendant was convicted of "attempted theft by deception." We remand this matter to the trial court for the appropriate correction of the judgment of conviction to reflect that defendant was convicted of the crime of theft by deception.

V
Defendant's final argument, not raised until this appeal, is that his conviction must be vacated because of two alleged errors that occurred during trial. Defendant's argument is without merit.
Prior to openings, the judge ruled that pursuant to N.J.R.E. 404(b) the State was precluded from utilizing defendant's civil complaint for damages against A & P as proof of his intent to defraud or as proof of his propensity to commit a crime. The State was permitted to refer to the complaint as proof of defendant's motive for simulating a slip-and-fall on the supermarket's premises. In her opening remarks, the prosecutor stated: "defendant used deception and false pretenses in his attempt to collect money in a civil lawsuit that he filed against the A & P." Defendant did not object to the statement when it was made, but now argues on appeal that is was prosecutorial misconduct warranting reversal of defendant's convictions. Even though the prosecutor's comment was improper, the judge on the next day of trial gave to the jury an instruction which properly limited the scope of the jury's consideration of the complaint to defendant's motive, and for no other reason. The jury again was instructed in regard to *62 its limited consideration of the complaint in the judge's final charge. Thus, the improper statement, in the context of the entire opening, and as defused by the judge's two limiting instructions, was incapable of producing an unjust result. R. 2:10-2.
Again, as plain error, defendant contends that the trial judge coerced the jurors into returning a guilty verdict on both counts. On Thursday, the last day of trial, and after the jurors were two hours into their deliberations, the judge brought them into the courtroom at approximately 5:00 p.m. and inquired if they wished to recess for the night. At their request, he allowed them to continue to deliberate rather than return on the following Wednesday, the first available day for the court to accommodate them in resuming their deliberations. The jurors deliberated and returned their verdict later that evening although the record does not reflect the time of the verdict. We are satisfied that the trial judge was trying to accommodate the jurors by allowing them to continue their deliberations past 5:00 p.m., rather than requiring them to return the following week. Defendant did not object to this procedure; it is therefore apparent that defendant's counsel approved of the court's accommodation of the jurors at that time. We do not find that the court's accommodation of the jury was inappropriate, nor was it "clearly capable of producing an unjust result." R. 2:10-2.
Defendant's convictions are affirmed. We remand this case to the trial court to correct count two of the judgment of conviction so that it properly reflects the conviction as "theft by deception."
Affirmed.
NOTES
[*] Defendant has failed to note in his point headings and brief those issues which were not presented to the trial court, a violation of Rule 2:6-2(a)(1). We have noted each of those issues in our statement of defendant's point headings.