**NOT FOR PUBLICATION WITHOUT APPROVAL OF
THE TAX COURT COMMITTEE ON OPINIONS**

PUNISH AND INDU MALHOTRA,

     Plaintiff,

     v.

DIRECTOR, DIVISION OF TAXATION,

     Defendant.

TAX COURT OF NEW JERSEY

DOCKET NO.    010788-2018

Approved for Publication
In the New Jersey
Tax Court Reports

Decided: December 16, 2021

Punish and Indu Malhotra, plaintiffs (self-represented).

Miles Eckardt, Deputy Attorney General, for defendant
(Andrew J. Bruck, Acting Attorney General of New Jersey, attorney).

**ORSEN, J.T.C.**

This opinion constitutes the court's decision with respect to cross-motions for summary judgment. For the reasons stated more fully below, the court concludes that the statute of limitations had expired for defendant, Director, Division of Taxation (the "Director"), to collect the refunded principal with penalties and interest. Therefore, the Director's motion for summary judgment is denied and the plaintiffs' motion for summary judgment is granted.

**FACTS**

The undisputed facts are as follows. Punish Malhotra filed a New York State Nonresident Income Tax return for tax year ending 2013 ("2013 tax year"), reporting 100% of his wage income as sourced to and taxable by New York. The return showed a total tax liability of $5,543, which was offset by a credit for income tax withheld of $5,522 based on the Form W-2 issued by his

*

employer. The Form W-2 showed income tax withholding only on behalf of New York State. The employer made no income tax withholding on behalf of New Jersey.

On February 18, 2014, plaintiffs (collectively "Taxpayer"), filed their New Jersey Gross Income Tax resident return. ("New Jersey return").[1] On this return, Taxpayer reported $5,522 as New Jersey income tax withholding, when in fact, such an amount was actually New York State income tax withholding, paid by Taxpayer's employer towards New York State income tax. Taxpayer also claimed a credit for his taxes paid to New York State of $3,751 on the New Jersey return. Because of these credits, Taxpayer reported an overpayment on the New Jersey return and received the requested refund of $5,203. The refund was issued by the Director on March 11, 2014. The 2013 tax year was Taxpayer's first full year paying income tax in America, having moved to the United States in 2012 on a work permit.

The Director later examined the New Jersey return and corrected it to remove the amount reported as New Jersey income tax withholding after reviewing Taxpayer's 2013 Form W-2. On May 9, 2018, the Director issued a 2013 NJ Gross Income Tax Adjustment underpayment billing notice ("billing notice") of $5,706.28, which included the refund paid plus accrued penalty and interest that was received by Taxpayer. The billing notice also included a credit for $1,738 overpayment from the 2017 tax return.

By complaint dated June 3, 2018 (but filed July 12, 2018), Taxpayer appealed the Director's set-off of their 2017 tax year income tax refund against the amounts owed because of the 2013 tax year income tax refund. Taxpayer alleged that the assessed interest and penalty amounts were exorbitant, especially due to the passage of time.

---

[1] Indu Malhotra is a plaintiff in this litigation by virtue of filing an income tax return with plaintiff Punish Malhotra, her spouse.

In 2019, Taxpayer applied to become an American citizen. To ensure no issues would prevent this course, they contacted the Director to resolve the 2013 tax year claim. At such time, Taxpayer was informed that they could pay the erroneous refund amount plus interest and penalty, which would prevent their continued accrual, however such payment would have no impact on the decision as to the instant complaint. Taxpayer then immediately sent a check to the Director for the entire outstanding amount.

On September 10, 2020, the Director filed a motion for summary judgment, requesting that the court uphold the Director's determination consistent with the billing notice for Taxpayer's 2013 income tax and return of the erroneous refund. Taxpayer issued opposition and a cross-motion for summary judgment to the Director for abatement of penalties and interest, which were later uploaded to eCourts on November 9, 2020. The Director responded to Taxpayer's cross-motion by letter dated October 13, 2020. Oral argument was scheduled.

On December 7, 2020, the court held a status telephone conference call on the record. The Director and Taxpayer advised that no settlement could be reached. Taxpayer advised that a second check for the tax payment was issued to the Director as the first check was deemed lost. The court advised the parties to be prepared to discuss the statute of limitations as it applies to this case, as mentioned in the Director's brief and confirmation of the refund date during oral argument.

During oral argument, Counsel for the Director shared his screen and read into the record the general statute of limitations for assessment per N.J.S.A 54A:9-4(a) and the statute of limitations for recovering an erroneous refund per N.J.S.A 54A:9-4(c)(4). The Director alleged for the first time that in addition to the billing notice sent on May 9, 2018, the Director actually first notified Taxpayer of the erroneous refund much earlier on March 29, 2017, through another bill. The Director argued that should the three-year statute of limitations apply, then the date should

3

run from April 15, 2014, the due date of the return pursuant to N.J.S.A 54A:9-4(a). In the alternative, the five-year statute of limitations would apply as the refund was induced by a misrepresentation of a material fact because taxes were not paid and withheld to New Jersey as per N.J.S.A 54A:9-4(c)(4). Further, penalties and interest should not be abated as there is no authority to support reduction in this matter as plaintiff did not rely on erroneous advice or any other compelling reason.

The Taxpayer argued that since he made a mistake on his tax return, he was willing to pay the principal amount of taxes, but the late-fee penalties and interest were unfair due to the Director's delay in issuing a correction near the three-year statute of limitations. In response, the Director stated, "I don't envy first time tax filers; that seems like a daunting task for sure; but the fact is taxpayers in New Jersey are charged with knowing the law; whether they filed taxes 20 times or they are filing taxes for the first time; now taxpayer had the W-2s telling him that zero dollars were withheld to New Jersey for tax year 2013 and he could have used that information at the time he filed his New Jersey return. So, while I sympathize on a personal level with that, the law doesn't provide a break on interest or penalty for plaintiff's mistake of fact in that regard."

In addition to 2017, Taxpayer stated that his 2018 and 2019 refunds were withheld toward such liability while he was attempting to amicably resolve the matter. With respect to the billing notice dated March 29, 2017, Taxpayer did not remember receiving the notice but may have received it based on counsel's assertions. Further, Taxpayer asserted that a mistake does not qualify as a misrepresentation, which requires someone to do the act with intent, and that this case involved a mistake that was unintentional. The court requested supplemental documentation with respect to the Director's billing notices and refund to the Taxpayer.

4

Subsequently, after oral argument, the Director supplemented the record with a new certified exhibit of a screenshot from its computer records that showed certain entries in Taxpayer's account. When explaining the screenshot in its certification, the Director stated that under the column "Trn Cde" (transaction code) were two titled "Bil" (billing or bill) dated March 29, 2017, and May 9, 2018. The Director stated that these were the dates on which it sent bills to the Taxpayer seeking repayment for the erroneous refund dated March 11, 2014.

The court then held a supplemental conference call with the parties on the record to afford the parties an opportunity to discuss the materials submitted and schedule another proceeding if necessary. Taxpayer acknowledged receipt of the May 9, 2018, bill but did not recall receiving the March 29, 2017, bill as noted during oral argument and asserted that such a screenshot was not conclusive. Taxpayer reiterated that the Director had been withholding refunds from previous years to offset the alleged amount due for the 2013 tax year. With respect to the status of the replacement check being received, Taxpayer advised that he would have to review whether it was cashed, and Director was not aware of the status. The Director restated the timeframes for the three and five-year time periods of the statute of limitations. At the conclusion of the conference call, the court provided an opportunity to further supplement the record if necessary. Both parties declined to provide any other information or request further argument. No additional filings were submitted.

**ANALYSIS**

To determine whether summary judgment is appropriate at this juncture, the court must determine whether there exists a disputed material fact in this matter.

In Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520 (1995), the New Jersey Supreme Court articulated the summary judgment standard as follows:

5

> [W]hen deciding a motion for summary judgment under Rule 4:46-2, the determination whether there exists a genuine issue with respect to a material fact challenged requires the motion judge to consider whether the competent evidential materials presented, when viewed in the light most favorable to the non-moving party in consideration of the applicable evidentiary standard, are sufficient to permit a rational fact finder to resolve the alleged disputed issue in favor of the nonmoving party.
>
> [Id. at 523.]

"Furthermore, 'the court must accept as true all evidence which supports the position of the party defending against the motion and must accord him (or her) the benefit of all legitimate inferences which can be deduced therefrom, and if reasonable minds could differ, the motion must be denied.'" Alpha I, Inc. v. Dir., Div. of Taxation, 19 N.J. Tax 53, 56 (Tax 2000) (citing Brill, 142 N.J. at 535).

Additionally, Brill provides that,

> By its plain language, Rule 4:46-2 dictates that a court should deny a summary judgment motion *only* where the party opposing the motion has come forward with evidence that creates a "genuine issue as to any material fact challenged." That means a non-moving party cannot defeat a motion for summary judgment merely by pointing to *any* fact in dispute.
>
> [Brill, 142 N.J. at 529 (emphasis in original).]

In fact, disposition by summary judgment is only proper "where the party opposing summary judgment points only to disputed issues of fact that are 'of an insubstantial nature.'" Ibid. ""Substantial" in the context of summary judgment is '[h]aving substance; not imaginary, unreal, or apparent only; true, solid, real . . . firmly based, a substantial argument.'" Ibid. (quoting THE COMPACT OXFORD ENGLISH DICTIONARY (2d ed. 1993)).

The court acknowledges that granting summary judgment is not proper where a claim or defense involves a determination of an actor's state of mind. See, Wilson v. Amerada Hess Corp.,

6

168 N.J. 236 (2001). "The motion should ordinarily not be granted where an action or defense requires determination of a state of mind or intent, such as claims of waiver, bad faith, fraud, or duress." The Pressler & Verniero, Current N.J. Court Rules, cmt. 2.3.4 on R. 4:46-2 (2021); see e.g., Auto Lenders v. Gentilini Ford, Inc., 181 N.J. 245, 271-272 (2004). "Where a party's right to relief depends on a subjective element, the motion for judgment against him will not be defeated if the facts show indisputably that a claimed subjective understanding is contrary to the undisputed facts." Pressler & Verniero, cmt 2.3.4 on R. 4:46-2 (quoting Liberty Surplus Ins. Corp. v. Nowell Amoroso, P.A., 189 N.J. 436, 446-47, 450 (2007) (finding that even when credibility may be an issue, "[i]f there exists a single, unavoidable resolution of the alleged disputed issue of fact, that issue should be considered insufficient to constitute a 'genuine' issue of material fact." Brill, supra, 142 N.J. at 540)).

As noted above, a matter that involves a determination of an actor's intent is not ripe for summary judgment. One of the issues here involves whether the Director's recovery of an erroneous refund was timely for tax year 2013 as set forth under N.J.S.A. 54A:9-4(c)(4), which states in part, "except that the assessment may be made within 5 years from the making of the refund if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact." Ibid. In the present case, the court does not need to decide the issue of intent as the Director does not argue that Taxpayer had the requisite intent as applied to the statute involving fraud or misrepresentation. Further, the parties do not dispute whether Taxpayer acted with intent, and Taxpayer stated that this was simply a mistake. Director noted the same and never asserted anything to the contrary. The court declines to create a factual issue where neither party has seen fit to raise or argue that one might exist. Therefore, the court will not question the intent when Taxpayer's assertion that it was simply a mistake that has gone repeatedly uncontroverted by the

Director.  Based on the undisputed facts, as the issues in this matter call for legal interpretation of the statute of limitations and collection of an erroneous refund with related issues of abatement of interest and penalties, the court can decide this matter by way of summary judgment.

The issues presented here are whether an erroneous refund issued to Taxpayer can be recovered by the Director and whether Taxpayer is entitled to penalty and interest abatement. Accordingly, the court must first determine whether the Director has statutory authority to recover the erroneous refund in this case.

I.    *Three- Year Statute of Limitations*

The Director must take appropriate action within three-years of an erroneous refund to a taxpayer.  The relevant statute provides as follows:

> An erroneous refund shall be considered an underpayment of tax on the date made, and an assessment of a deficiency arising out of an erroneous refund may be made at any time within 3 years from the making of the refund . . . .
>
> [N.J.S.A 54A:9-4(c)(4).]

To meet the three-year statute of limitations, the Director must have been given notice of the erroneous refund within three-years of issuing the refund as per the plain language reading of N.J.S.A. 54A:9-4(c)(4).  The statute includes the phrase, "at any time within 3 years from the making of the refund," therefore, the logical interpretation is that the notice of an erroneous refund must be sent by the Director within three years of the issuance of the original refund.

Of course, the taxpayer must also receive notice of the erroneousness of the refund. Something as simple as a bill or a notice of deficiency would be enough to constitute notice.  For instance, in Gordon v. Taxation, 5 N.J. Tax 630 (Tax 1983), the court noted that the Director's September 1980 letter to the taxpayers that the Director had erroneously refunded the taxpayers' income tax in 1979 (for tax year 1977) was within the three-year statute of limitations.  The court

8

stated that the Director was required "to make an assessment of a deficiency within three years from March 16, 1979, the date of the erroneous refund," id. at 635, thus the September 1980 letter sufficed to constitute a timely notice of deficiency.

During oral argument, the Director alternatively argued that the three-year limitations clock began April 15, 2014, the date the 2013 New Jersey return was due under N.J.S.A 54A:9-4(a) which states,

> (a) General. Except as otherwise provided in this section, any tax under this act shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed).
>
> [ Ibid.]

Thus, Director's March 29, 2017, billing notice was well within the time limit. There is simply no support for this argument. The plain language of an erroneous refund is governed by the exception provided under N.J.S.A 54A:9-4(c)(4), which states that the three-year limitations period begins "from the making of the refund," even though the assessment for the erroneous refund can be made at "any time" within this period. N.J.S.A. 54A:9-4(c)(4).

Here, the refund was issued to Taxpayer on March 11, 2014. Three years after March 11, 2014, is March 11, 2017. Both billing notices dated March 29, 2017, and May 9, 2018, exceeded the three-year statute of limitations of March 11, 2017, that applies to assess a deficiency of an erroneous refund pursuant to N.J.S.A 54A:9-4(c)(4). Thus, the three-year statute of limitations had expired for the Director to obtain the erroneous refund.

II.    *Five-Year Statute of Limitations*

Erroneous refunds are entitled to an alternative extended five-year statute of limitations if the refund is acquired through fraud or misrepresentation of a material fact. Thus, the same statute provides:

> An erroneous refund shall be considered an underpayment of tax on the date made, and an assessment of a deficiency arising out of an erroneous refund may be made at any time within 3 years from the making of the refund, <u>except that the assessment may be made within 5 years from the making of the refund if it appears that any part of the refund was induced by fraud or misrepresentation of a material fact</u>.

> [N.J.S.A. 54A:9-4(c)(4) (emphasis added).]

The court finds that fraud requires malintent, which should be proven. For instance, N.J.S.A. 54:52-10, Filing of a fraudulent return, provides:

> A person is guilty of a crime of the third degree if he files, prepares, causes to be filed or assists in the preparation or filing of a false or fraudulent return . . . with the intent to evade, avoid or otherwise not make timely payment of any tax, fee, penalty or interest, or any part thereof.

<u>See also</u>, <u>State v. Barasch</u>, 372 N.J. Super. 355 (App. Div. 2004) (analyzing the intent requirement of collected but fraudulently unpaid sales tax and noting that fraud requires an intent to evade that is more than mere carelessness or negligence in failing to collect sales taxes); <u>State v. Cobbs</u>, 451 N.J. Super. 1 (App. Div. 2017) (unintentional non-payment would not become fraud unless the taxpayer became aware of the mistake and chose not to rectify it.). <u>Cf.</u> N.J.A.C. 18:2-2.9(b) (fraud is defined as the "intent to evade or avoid the payment of taxes known to be due to the State" and consists of "conduct intended to conceal, mislead, or otherwise prevent the administration and collection of the taxes imposed by the laws of this State."). <u>Cf.</u> N.J.A.C. 18:2.2.9(d) ("Intent is distinguished from inadvertence, reliance on incorrect technical advice, honest difference of opinion, negligence or carelessness.") Thus, a taxpayer may reasonably fail to pay the appropriate taxes without intending to evade them. Anti-fraud statutes are clearly intended to prevent willful evasion and not carelessness or poor business sense.

10

Here, the Director does not argue that the refund was induced by fraud or that there was any intent on the part of Taxpayer. Further, there is nothing in the record to support an inducement of fraud, deliberate act, or intent by Taxpayer to evade paying the 2013 gross income tax. Therefore, the five-year limitations for fraudulently inducing an erroneous refund does not apply.

During oral argument, the Director asserts that his erroneous refund assessment is still timely under the five-year limitations period because Taxpayer made a misrepresentation of material fact, which is claiming on the New Jersey return that $5,522 was withheld for New Jersey income tax when in fact this was not so. The Director argues that the term "misrepresentation" does not have an intent element. Further, misrepresentation does not require bad faith but can simply be a false statement of material fact. In response, Mr. Malhotra argues that a misrepresentation is something that someone is doing knowingly versus a mistake, which is not done knowingly. The Director posits that Taxpayer had the W-2, thus, either knew or should have known that no amounts were withheld for New Jersey income tax. Thus, either or both of his notices of erroneous refund (March 2017 and May 2018) were timely under the five-year time frame.

Taxpayer asserts that the error in claiming a credit for $5,522 on the New Jersey return was purely an innocent mistake, which was uncontroverted by the Director. This was the first full year that they had ever filed a tax return in the United States by themselves using a software program (having moved here in 2012 on a work permit and earning income below the reportable threshold). In later years, they pointed out, no such mistakes were made when returns were filed since there were no claims of erroneous refunds or underpayments of tax by the Director. Further, Taxpayer contended that a mistake without a deliberate knowing intent to defraud or evade tax, is not a misrepresentation.

11

The Director counters that any mistake or omission, even an unintentional one, falls within the language and intent of N.J.S.A 54A:9-4(c)(4)'s five-year limitations period. He notes that misrepresentation is a distinct event from fraud because these terms are separated by an "or" in the text of the statute. The "or" in the statute is intended to show that the terms fraud and misrepresentation have two separate meanings, and signals that there is a different standard for fraud and for misrepresentation. There would be redundancy in the statute if both, fraud and misrepresentation of material fact, required the same level of intent. Intent, per the Director, is the distinguishing characteristic of fraud, which implies that a misrepresentation can only occur separately from intent. In other words, the Director maintains, there is no intent requirement for a misrepresentation of a material fact.

It is unclear whether the statute treats a misrepresentation of material fact as having a standard that is different than fraud for purposes of an extended statute of limitations. The phrase is not defined in the statute, and the court is unable to determine the requisite level of intent, or lack thereof from the plain statute's plain language. Therefore, the court must look to alternative sources to determine the meaning of "misrepresentation of material fact" as used in the statute.

A search of the legislative history shows that the phrase was used in the original draft of the statute's enactment in 1976, and never thereafter amended, edited, or explained, with more precise language. When introduced, the bill contained the identical language: "except that the assessment may be made 5 years after the making of the refund if it appears that any part of the refund was induced by fraud or misrepresentation of material fact." See Assembly 1513 (Feb. 19, 1976). The statements accompanying the Bill (and its later amendments before it was enacted) make no reference to this provision. Thus, legislative history does not aid statutory construction.

12

Therefore, the court must consider alternative uses of the term in other aspects of the law to determine the requisite level of intent. The phrase "misrepresentation of material fact" is used frequently in the context of insurance contracts. In <u>Longobardi v. Chubb Ins. Co.</u>, 121 N.J. 530, 540 (1990), in determining whether there were material misrepresentations made by the insured, the Court stated: "[f]or an insurer to void a policy because of a post-loss misrepresentation, the misrepresentation must be knowing and material. A mere oversight or honest mistake will not cost an insured his or her coverage; the lie must be willful[.]" (citing N.J.S.A. 17:33A-4a(1), which proscribes knowing misrepresentation by an insured). However, the Court also observed that "[f]orfeiture does not depend on proof that an insured harbored an intent to recover proceeds to which he or she was not entitled[,]" thus, an insurer could deny payment "if an insured willfully misrepresented material facts after a loss, even if the insured did not harbor such an intent." <u>Ibid.</u>

The term is also prevalent in contract law. "Legal fraud or misrepresentation consists of a material misrepresentation of a presently existing or past fact, made with knowledge of its falsity, with the intention that the other party rely thereon, and that he does so rely to his damage." <u>Berman v. Gurwicz</u>, 189 N.J. Super. 89, 92 (Ch. Div. 1981) (quoting <u>Foont-Freedenfeld v. Electro-Protective</u>, 126 N.J. Super. 254, 257 (App.Div.1973), <u>aff'd</u>, 64 N.J. 197 (1974)). However, "[i]n equitable fraud, the second element (knowledge) is not necessary, but the other four are essential." <u>Berman</u>, 189 N.J. Super. at 92-3. In <u>Berman</u>, the plaintiffs purchased units in a condominium association but sought cancellation due to fraud and concealment of the lease of a recreational area on the property. The court went further to state,

> The fact that no affirmative misrepresentation of a material fact has been made does not bar relief. The suppression of truth, the withholding of the truth when it should be disclosed, is equivalent to the expression of falsehood. The question under those circumstances is whether the failure to volunteer disclosure of certain facts amounts to fraudulent concealment, or, more

specifically, whether the defendant is bound in conscience and duty to recognize that the facts so concealed are significant and material and are facts in respect to which he cannot innocently be silent. Where the circumstances warrant the conclusion that he is so bound and has such a duty, equity will provide relief.

[Id. at 94 (quoting Jewish Center of Sussex County v. Whale, 165 N.J. Super. 84, 89 (Ch. Div.1978), aff'd, 172 N.J. Super. 165 (App.Div.1980) (citations omitted).]

Black's Law Dictionary includes an entry for 'material misrepresentation.' The term is defined as, "[i]f known to the other party, a contract, deal, or transaction could have been aborted, or significantly altered by this deliberate hiding or falsification of a material fact." Black's Law Dictionary, 881 (5th ed. 1979). The term "misrepresentation" is "colloquially . . . understood to mean a statement made to deceive or mislead." Id. at 903.

Based on these interpretations of the term "misrepresentation," there is a clear indication that a misrepresentation is more than a mere scrivener's error. A scrivener's error or clerical error is well established as a non-judgment-based error. See, Lockwood v. Walsh, 137 N.J. Eq. 445, 450 (Prerog. Ct. 1946) (finding "I am not here concerned with an error of mathematical calculation, the certainty of which could always have been demonstrated, but rather with an obliquity of judgment.").

Case law and the dictionary definition of the word "misrepresentation" shows that there is a common thread in its meaning; to have a misrepresentation there must be something more than nothing. The words used above: "knowing," "intent that others rely," "lying," "deliberate," and "concealment" all denote that a misrepresentation requires a level of intent that does not rise to the level of fraud but cannot be done accidentally. Fraud requires a high level of intent to defraud, but misrepresentation must include some level of intent that is above a mistake.

14

Taxpayer never relents from the assertion that the erroneous refund was the result of a mistake, which was caused because it was his first-time filing taxes in the United States, an assertion to which the Director states that New Jersey taxpayers are charged with knowing the law and a mistake of fact offers no break. At no point during the proceeding did the Director argue anything to the contrary, other than to acknowledge Taxpayer simply made a mistake. There is also no evidence in the record nor assertion by the Director that Taxpayer concealed the error. Further, a knowledge standard in which Taxpayer "knew" of the error at the time of filing implies that the taxpayer intended to achieve an erroneous return, which is not the case here. In the alternative, a "should have known" standard is just a lookback in time that would nullify a mistake that is not supported by the term "misrepresentation."

The Director's claim that Taxpayer made a knowing misrepresentation of material fact is diluted. Why would Taxpayer's actions be considered a misrepresentation when Taxpayer filed with the New Jersey return, and the Director had the document evidencing the withholdings, i.e., the W-2? When reviewing the filed New Jersey Tax return, thus, the Director had the withholding amounts and the taxing authority for which the withholding was made in his possession, as evidenced by his billing notices. Taxpayer did not mislead or hide the fact of the actual withholding. It is the Director who had the withholding information and simply missed examining it. Further, the Director had the opportunity to verify the New Jersey return with the correct information on file before the issuance of a refund through computer automated procedures or by an individual. If Taxpayer had any willingness to misrepresent the Director, the submission of a proper Form W-2 would run counter to that end. If the court allows a taxpayer's mistake or error to be considered a misrepresentation of material fact, the Director would be shedding all its responsibility to unfairly burden Taxpayer under the aegis of a five-year statute of limitations.

As a final consideration, the statute is composed in such a way that implies that not every error rises to the level of a misrepresentation of material fact. The Director would not have any deficiencies to assess without errors of some kind, committed either by the taxpayer or by the Director. The Director is not assessing deficiencies over immaterial facts. Clearly, material mistakes drive deficiencies, but that does not mean that all material mistakes are misrepresentations. To revisit the language in N.J.S.A 54A:9-4(c)(4): "An erroneous refund shall be considered an underpayment of tax on the date made, and an assessment of a deficiency arising out of an erroneous refund may be made at any time within 3 years from the making of the refund." There would no reason for a three-year statute of limitations if any assessable error triggers a five-year statute of limitations. To justify both, a three-year and a five-year statute of limitations, there must be assessable errors that are not misrepresentations of material facts. For the court to find that every mistake is a misrepresentation would render the distinction between the five-year and three-year statute of limitations meaningless.

Taxpayer's return was clearly wrong, but this was an inadvertent or even ignorant mistake, a matter of a one-time filing confusion, resulting in a clerical error. Taxpayer did not receive notice about his error from the Director until the potential receipt of the March 29, 2017, billing notice. In the interim, he filed at least his 2014 and 2015 returns. He did not repeat the same error in later years. This indicates that the issue here was an unfamiliarity with the forms and terminology that was rectified through repeated exposure to tax forms. There is no indication that Taxpayer was representing anything other than what he thought he was expected to electronically fill out. Based on a survey of the interpretation of the terms as noted above, a simple mistake, whether by commission or omission, cannot equate to a finding of misrepresentation of material fact. Since

the mistake is not deemed a misrepresentation, the court need not go further to determine whether such error is a material fact.

A misrepresentation of material fact must be more than an innocent mistake, and Taxpayer's mistake was just that in this case. Thus, the five-year statute of limitations does not apply in this case. The court finds that the statute of limitations was three years after the making of the refund on March 11, 2014, which expired on March 11, 2017. As a result of no tax being due, the court's analysis on the abatement of interest and penalties is moot. Had notification been sent to Taxpayer within the three years, the Director would have had the right to recover the erroneous refund. The Director is not entitled to the refund recovery because the statute of limitations had simply run out. Although this may seem unpalatable to some, such an interpretation is consistent with the law. The same result would occur if a taxpayer had filed a late refund claim for an overpayment to the Director after the applicable statute of limitations had expired.[2] If a taxpayer files a claim for refund for a substantial tax overpayment even one day late, then the law provides that the Director is able to keep such monies not otherwise entitled. Accordingly, the Director must be held to the same standard to which it holds taxpayers in the state.

**CONCLUSION**

For the foregoing reasons, Taxpayer's motion for summary judgment is **GRANTED** and the Director's motion for summary judgment is **DENIED**.[3]

---

[2] See e.g., Wigton v. Dir., Div. of Taxation, 12 N.J. Tax 373, 380 (Tax 1992) (finding "Taxpayers' claim for a 1985 New Jersey gross income tax refund, having been made beyond the three-year statute of limitations period, is denied").

[3] Taxpayer's requested relief of abatement of interest and penalties is granted as there is no tax due. Accordingly, the Director must refund Taxpayer any payments made, or tax refunds withheld with applicable interest.