NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO.  A-4479-14T2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GREGORY P. COBBS,

    Defendant-Appellant.

_____

> **APPROVED FOR PUBLICATION**
>
> **June 23, 2017**
>
> **APPELLATE DIVISION**

Submitted November 29, 2016 — Decided June 23, 2017

Before Judges Fisher, Ostrer and Leone.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment No. 13-07-0893.

Joseph E. Krakora, Public Defender, attorney for appellant (Jaime B. Herrera, Assistant Deputy Public Defender, of counsel and on the brief).

Angelo J. Onofri, Acting Mercer County Prosecutor, attorney for respondent (Mary E. Stevens, Special Deputy Attorney General/ Acting Assistant Prosecutor, of counsel and on the brief).

The opinion of the court was delivered by

OSTRER, J.A.D.

This appeal requires us to determine when the five-year statute of limitations begins to run against a prosecution for intentional failure to pay New Jersey taxes.  N.J.S.A. 54:52-

9(a). Upon reconsideration, the trial court denied defendant's motion to dismiss count one of the July 10, 2013 indictment, which charged him with failure to pay $194,817.56 in gross income tax for tax year 2007. Thereafter, defendant entered a conditional guilty plea to that charge, and the State dismissed count two of the indictment, which timely alleged failure to pay $18,336 in 2008 tax. Defendant did so after the court affirmed denial of his application to pretrial intervention (PTI).

Having considered the plain language of the tax law, and applicable principles of statutory interpretation, we conclude that the limitations period under N.J.S.A. 2C:1-6 for failure to pay tax under N.J.S.A. 54:52-9(a) begins to run when the defendant has failed to pay taxes when due and owing, and has done so with the intent to evade, avoid or otherwise fail to make timely payment. This can occur on the day taxes are first due, or on a later date when the necessary state of mind first emerges.

In this case, the indictment alleged that both non-payment and intent coexisted as early as July 8, 2008. Therefore, count one of the July 10, 2013 indictment was time-barred. We reject the State's argument that the limitations period was tolled until February 2010, when defendant engaged in his last affirmative act to evade and avoid payment.

We also affirm the court's denial of defendant's PTI appeal. We therefore reverse defendant's conviction and remand for further proceedings with respect to count two of the indictment.

I.

For purposes of this appeal, we assume the facts alleged in the indictment. State v. Morrison, 188 N.J. 2, 12-13 (2006) (on motion to dismiss indictment, court must consider evidence presented to the grand jury in light most favorable to the State); State v. Riley, 412 N.J. Super. 162, 167 (Law Div. 2009) (on motion to dismiss indictment, court accepts facts alleged by State). According to count one, "on diverse dates between July 8, 2008 and February 27, 2013," defendant "fail[ed] to pay or turn over when due" $194,817.56 in tax due for tax year 2007, and he did so "with the intent to evade, avoid or otherwise not make timely payment or deposit . . . ." Count two alleges that between October 15, 2008 and February 27, 2013, defendant failed to pay when due $18,336 in tax for the 2008 tax year, while having the same state of mind. Neither count charged defendant with failing to pay a specific amount of interest, fees or penalties.

The State also alleged, and defendant did not dispute for purposes of his motion, that defendant filed his gross income

tax return on July 7, 2008. It was due April 15, 2008 and he did not seek an extension. Defendant reported over $2.3 million in taxable income, but failed to remit any tax then due, which he calculated to be $196,065. Defendant was thereafter given a modest credit, producing the $194,817.56 amount stated in the indictment.

On February 17, 2009, an outside tax collector for the Division of Taxation (Division), Pioneer Credit Recovery, Inc. (Pioneer), notified defendant by mail of his tax delinquency and sought payment of $274,453.82, consisting of $194,065 in tax; interest of $16,012.28 through March 15, 2009; penalties of $38,915.20; and a recovery fee of $24,950.34.[1] Pioneer personnel communicated with defendant by telephone multiple times between March 2009 and February 2010. Defendant repeatedly promised Pioneer and Division personnel that he would make payments, but he did not. On February 9, 2010, defendant contacted the Division and said the proverbial "check was in the mail" — actually in a Federal Express package. He supplied the tracking number, but no payment was enclosed. The case was transferred to the Attorney General in April 2010. Aside from his

---

[1] The slight differences between Pioneer's calculation of tax owed and the amount alleged in the indictment are unexplained by the record.

continuing non-payment, the State proffered no acts of evasion thereafter, although the indictment referred to actions on "diverse dates" as late as February 2013.

Over three years later, a Mercer County grand jury returned the two-count indictment against defendant.[2] Defendant was denied admission to PTI, and the trial court rejected defendant's appeal. After the plea cut-off date, see R. 3:9-3(g), defendant filed his motion to dismiss count one as time-barred.

The court initially granted the motion, but reversed itself upon the State's reconsideration motion. Defendant contended the five-year limitations period under N.J.S.A. 2C:1-6(b)(1) began to run on April 16, 2008, the day after his taxes were due. The State argued the crime was complete, and the statute of limitations commenced, after defendant satisfied two elements: he failed to pay the tax when due; and he engaged in his last affirmative act to evade or avoid payment, which was in February 2010, when defendant falsely stated he sent a check by Federal Express.[3]

---

[2] The State offers no explanation for the delay.

[3] Initially, the State also contended the limitations period did not begin to run as long as taxes were due and owing. In first granting defendant's motion, the trial court focused on and rejected this argument. On reconsideration, the State
(continued)

In ultimately denying defendant's dismissal motion, the court held that the Legislature intended to designate criminal failure to pay tax under N.J.S.A. 54:52-9(a) as a continuing crime, although it did not do so explicitly. The court agreed the limitations period began to run after a defendant's last act that evidenced an intent to evade or avoid payment of tax. As that occurred in February 2010, the July 10, 2013 indictment was timely.

Defendant thereafter entered an open, conditional plea of guilty to count one. In his allocution, defendant admitted he filed his 2007 tax return on July 8, 2008; it reflected $194,817.56 in tax due; he intended to avoid payment; and he thereafter made multiple unkept promises to pay, and sent an empty Federal Express envelope after promising to enclose a payment. On April 17, 2015, the court sentenced defendant, then fifty-one years old, to five years of probation and 100 hours of community service. The court required restitution of $150,000, in monthly payments of a least $500 over ten years.[4]

---

(continued)
emphasized its alternative argument that the last affirmative act of evasion or avoidance triggered the limitations period.

[4] The court also purported to impose, in advance, 364 days of incarceration if defendant failed to complete probation. We note that such a sentence is contrary to State v. Bayless, 114 N.J. 169, 175-78 (1989), which requires the trial court, at a resentencing for violation of probation, to consider the
(continued)

This appeal followed. Defendant raises the following points for our consideration:

POINT I

THE STATUTE OF LIMITATIONS BEGAN TO RUN ON JULY 7, 2008 BECAUSE FAILURE TO PAY IS A POINT-IN-TIME CRIME AND NOT A CONTINUING OFFENSE.[5]

POINT II

MR. COBBS' REJECTION FROM PTI CONSTITUTES A PATENT AND GROSS ABUSE OF DISCRETION BECAUSE THE PROSECUTOR INAPPROPRIATELY WEIGHED HIS PRIOR CONVICTION AND FAILED TO CONSIDER ALL RELEVANT FACTORS.

II.

As defendant does not challenge any trial court fact findings, we review de novo, as a question of law, the court's denial of his motion to dismiss count one of the indictment on statute of limitations grounds. See State v. Cagno, 211 N.J. 488, 505-06 (2012). The Code of Criminal Justice (Code) sets forth guiding principles.[6] Subject to various exceptions not relevant here, "[a] prosecution for a crime must be commenced within five years after it is committed." N.J.S.A. 2C:1-

---

(continued)
aggravating factors found to exist at the original sentencing and the mitigating factors affected by the probation violation.

[5] We omit sub-headings that simply outline defendant's argument.

[6] Although the crime is defined in Title 54, the State concedes that N.J.S.A. 2C:1-6 governs.

6(b)(1). The limitations period starts the day after the crime is committed, ibid., and the prosecution is "commenced" when an indictment is found. N.J.S.A. 2C:1-6(d). The statute of limitations is an absolute bar to untimely prosecution. State v. Diorio, 216 N.J. 598, 613 (2014).

To determine when a crime "is committed," the statute creates a dichotomy between "discrete act" crimes, and "continuing crimes." Id. at 614. "An offense is committed either when every element occurs or, if a legislative purpose to prohibit a continuing course of conduct plainly appears, at the time when the course of conduct or the defendant's complicity therein is terminated." N.J.S.A. 2C:1-6(c).

We must first consider whether the Legislature expressed a purpose, explicitly or impliedly, to treat the intentional failure to pay tax as a continuing course of conduct crime, that is, a continuing crime. The Code "'establishes a presumption against finding that an offense is a continuous one.'" Diorio, supra, 216 N.J. at 614-15 (quoting II The New Jersey Penal Code, Final Report of the N.J. Criminal Law Revision Commission § 2C:1-6 commentary 2 at 15 (1971) (Final Report)). "An offense should not be considered a continuing offense 'unless the explicit language of the substantive offense compels such a conclusion, or the nature of the crime involved is such that

[the legislative body] must assuredly have intended that it be treated as a continuing one.'" Id. at 614 (quoting Toussie v. United States, 397 U.S. 112, 115, 90 S. Ct. 858, 860, 25 L. Ed. 2d 156, 161 (1970)).

A.

We begin with the statute's plain language. See In re Kollman, 210 N.J. 557, 568 (2012). The intentional failure to pay statute consists of two elements: first, the failure "to pay or turn over when due any tax, fee, penalty or interest or any part thereof required to be paid pursuant to the provisions of the State Tax Uniform Procedure Law, [N.J.S.A.] 54:58-1 et seq., as amended and supplemented, or any State tax law," and, second, "the intent to evade, avoid or otherwise not make timely payment or deposit of any tax, fee, penalty or interest or any part thereof." N.J.S.A. 54:52-9(a). The statute also expressly provides that if a taxpayer submits a bad check, a fact-finder may infer the requisite state of mind not to pay:

> The fact that any payment was made with a subsequently dishonored negotiable instrument shall constitute prima facie evidence that the actor failed to pay within the meaning of subsection a. of this section, and the trier of fact may draw a permissive inference therefrom that the actor did not intend to make the payment.
>
> [N.J.S.A. 54:52-9(b).]

In short, to be criminally liable, the taxpayer must have, first, failed to pay the tax "when due," and, second, acted "with the intent to evade, avoid or otherwise not make timely payment . . . ." N.J.S.A. 54:52-9(a). A taxpayer may satisfy these two elements as early as the day taxes are due, which is April 15 in the case of gross income tax. See, e.g., N.J.S.A. 54A:8-1(a) (stating that payment of gross income tax is due April 15).[7] Although unpaid taxes may remain due and owing after they first become due, the first element is satisfied when the taxpayer initially fails to pay.

We reject defendant's suggestion that the statute does not commence until the taxpayer's late filing, in this case, July 2008. If that were so, then the statute would never begin to run if a taxpayer never filed. Instead, we understand "when due" to mean that, absent an extension of the payment date, gross income taxes are due on April 15, regardless of the taxpayer's unilateral decision to file late.[8]

---

[7] The State did not allege that defendant failed to pay estimated tax during the 2007 tax year, which would involve an earlier due date. N.J.S.A. 54A:8-5.

[8] Under N.J.S.A. 54A:8-1(a), "the director may extend either the filing or payment due date, or both, for any return under the 'New Jersey Gross Income Tax Act,' N.J.S.[A.] 54A:1-1 et seq., to coincide" with similar extensions for filing or payment of federal personal income tax returns. This statute also permits reasonable extensions, not greater than six months, for good
(continued)

A taxpayer may conceivably fail to pay, but do so without the requisite intent. For example, when a taxpayer carelessly forgets to mail a return and payment, criminal culpability may be absent. Consequently, the State must also show that the taxpayer failed to pay with an intent to evade payment. Cf. State v. Barasch, 372 N.J. Super. 355, 364-65 (App. Div. 2004) (noting that the "intent to evade, avoid, or otherwise not make timely payment" state of mind requirements in N.J.S.A. 54:52-8, -13, and -14 were added to avoid punishing "simple carelessness or poor business practices").[9] If the taxpayer realizes the oversight a month later, and then intentionally persists in non-payment, the crime would be complete at that point.[10]

---

(continued)
cause. N.J.S.A. 54A:8-1(b). Here, however, defendant did not seek an extension for filing or paying his 2007 taxes, under either circumstance.

[9] We need not address what other facts would defeat intent to evade, avoid or otherwise not make timely payment. We note but do not address the view of some federal courts that financial inability to pay does not negate willfulness in a prosecution for willful failure to pay taxes under 26 U.S.C.A. § 7203. See, e.g., United States v. Blanchard, 618 F.3d 562, 571-72 (6th Cir. 2010); United States v. Easterday, 564 F.3d 1004, 1010 (9th Cir. 2009).

[10] We reject the notion that there is no violation of N.J.S.A. 54:52-9(a) if a defendant, who failed to pay a tax without the intent when it was originally due, subsequently fails to pay with the "intent to evade, avoid or otherwise not make timely payment." Ibid. Notably, the Legislature did not include the phrase "when due" in the mens rea element. Instead, it included

(continued)

Although N.J.S.A. 54:52-9(a) is complete upon satisfaction of the two elements — non-payment and intent — the State contends that the crime should be treated as a continuing one. The State concedes that the intentional failure to pay statute does not explicitly define the crime as a continuing offense. The State contends the Legislature nonetheless must have intended that the offense be treated as a continuing one. Yet, as it did before the trial court, the State has jettisoned the argument that the offense continues as long as taxes are intentionally unpaid, which would mean the limitations period would rarely run. Rather, the State contends that an essential element of the crime is the evasion or avoidance of payment; consequently, the crime continues, and the limitations period does not begin to run, until the last affirmative act of evasion or avoidance.

The State misinterprets the elements of the crime. No affirmative act of evasion or avoidance is required, other than non-payment of taxes when due. The taxpayer's "intent to evade,

_____

(continued)
the phrase "timely payment." "Timely" means "[o]ccurring at a suitable or opportune time; well-timed." The American Heritage Dictionary 1271 (2d Coll. ed. 1985). A taxpayer who carelessly overlooked payment — i.e. failed to pay tax "when due" — and then discovered the oversight, but intentionally continued to withhold payment — i.e. with an intent to avoid "timely payment" — would satisfy the elements of the statute.

avoid or otherwise not make timely payment," <u>N.J.S.A.</u> 54:52-9(a), may certainly manifest itself in other affirmative acts of evasion or avoidance — such as unkept promises to pay, hiding of assets, or underreporting of income. However, those are not elements of the crime, although they may be circumstantial evidence of the taxpayer's requisite intent.

The State's position is also belied by subsection (b) of the statute. Under this subsection, payment with a subsequently dishonored negotiable instrument is prima facie evidence of failure to pay, and permits an inference of the requisite intent not to pay. <u>N.J.S.A.</u> 54:52-9(b). In other words, the crime may be complete, in all respects, upon payment with a dishonored instrument. No further proof is necessary. This provision thus suggests that the crime is a "discrete offense."

B.

The State's position also finds no support in the legislative history. The Legislature passed the intentional failure to pay statute in 1987 as part of a general strengthening of criminal tax offenses. <u>L.</u> 1987, <u>c.</u> 76, §§ 15-29 (now codified at <u>N.J.S.A.</u> 54:52-5 to -19). The get-tough approach was a counterweight to the temporary tax amnesty that the law established. <u>See</u> <u>Senate Revenue, Finance and</u>

Appropriations Committee Statement to Assembly Committee Substitute for Assembly No. 823, at 1-2 (June 12, 1986).

The Legislature created two sets of tax-related offenses, distinguished by the requisite state of mind. It is a disorderly persons offense if a taxpayer "recklessly or negligently . . . [f]ails to pay over any tax required by any State tax law[,]" N.J.S.A. 54:52-6(b), or engages in other proscribed conduct, such as "[f]ail[ing] to file any return or report[,]" N.J.S.A. 54:52-6(a); filing or making false statements, N.J.S.A. 54:52-6(c); failing to withhold taxes as required, N.J.S.A. 54:52-6(j); and failing to keep required records, N.J.S.A. 54:52-6(k).[11]

In contrast, it is a third-degree crime if a person fails to pay or turn over tax "with the intent to evade, avoid or otherwise not make timely payment . . . ." N.J.S.A. 54:52-9(a). This same mens rea requirement — "intent to evade, avoid or otherwise not make timely payment" — is incorporated into several other provisions in the 1987 statute. These include third-degree crimes to file false or fraudulent returns, N.J.S.A. 54:52-10; maintain or prepare false or fraudulent

---

[11] N.J.S.A. 54:52-6 is apparently drawn from N.J.S.A. 54:32B-26(b), which was repealed by L. 1987, c. 76, § 39. However, the prior law defined a disorderly persons offense without including an express mens rea requirement.

A-4479-14T2

books, N.J.S.A. 54:52-11; fail to maintain books or records, N.J.S.A. 54:52-12; fail to collect or withhold tax, N.J.S.A. 54:52-14;[12] and the fourth-degree crime to knowingly swear to, affirm, certify or verify any false or fraudulent statement, N.J.S.A. 54:52-19.[13] The Legislature evidently contemplated that the failure to pay taxes, as well as other violations of tax-related obligations, may be inadvertent or careless, which would warrant lesser sanctions as disorderly persons offenses. See Barasch, supra, 372 N.J. Super. at 364-65.

As the court did in Barasch, supra, we look to the statutory structure of the 1987 criminal tax provisions to discern legislative intent. Ibid.; see also State v. Smith, 197

---

[12] Prior law made it a misdemeanor to fail to file a report, or to file a false or fraudulent report "with the intent to defraud the state or evade the payment of any tax, fee, penalty or interest or any part thereof, which shall be due . . . ." L. 1936, c. 263, § 601, codified at N.J.S.A. 54:52-1, and repealed by L. 1987, c. 76, § 65. Applying a slightly different mens rea requirement, the old law also made it a misdemeanor to "knowingly swear to, affirm, or verify any false or fraudulent statement with intent to evade the payment of any state tax . . . ." L. 1936, c. 263, § 602, codified at N.J.S.A. 54:52-2, and repealed by L. 1987, c. 76, § 65. However, the old law apparently did not make it a misdemeanor to fail to pay tax with a similar state of mind requirement.

[13] The state of mind requirement in N.J.S.A. 54:52-19 uses the formulation "intent to evade, avoid or otherwise not pay any tax" as opposed to "otherwise not make timely payment of any tax" used in the other provisions. Whether the indictment would have been timely had it charged defendant with this or any other offense is not before us.

N.J. 325, 333 (2009) (stating that, in construing a statute, the court should "draw inferences concerning the meaning from its composition and structure" (internal quotation marks and citation omitted)).  There is no indication in the structure of the criminal tax provisions that an affirmative act of evasion or avoidance is an essential element of the intentional failure to pay crime under N.J.S.A. 54:52-9(a).  Rather, as noted above, various kinds of deceptive, fraudulent, or evasive acts are separately criminalized as third- or fourth-degree offenses.  See N.J.S.A. 54:52-10, -11, -14, and -19.  We infer from this separate treatment that the Legislature did not intend to make affirmative acts of avoidance or evasion an essential element of the intentional failure to pay crime; nor did the Legislature intend that the offense would be a continuing one until the last such affirmative act occurred.

C.

The State contends, citing United States v. Dandy, 998 F.2d 1344 (6th Cir. 1993), that the Legislature could not have intended to permit a taxpayer to avoid prosecution simply by hiding the nature of a tax fraud scheme for five years.  We are unpersuaded.  Dandy involved a prosecution for filing a false return under 26 U.S.C.A. § 7201, which states: "Any person who willfully attempts in any manner to evade or defeat any tax

16

imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony . . . ." 998 F.2d at 1349. The court held that the limitations period began to run upon the last affirmative evasive act. Id. at 1355-56. The court reasoned that to hold that the statute ran upon filing "would reward [the] defendant for successfully evading discovery of his tax fraud . . . ." Id. at 1355.

First, there was no false filing in this case. Cf. United States v. McGill, 964 F.2d 222, 230 (3d Cir. 1992) (stating that evasion of assessment cases under § 7201 can be established with the filing of a false tax return). In fact, the State knew defendant failed to pay his taxes no later than when he filed his 2007 return almost three months late, without an extension, and reported close to $200,000 in tax due. Furthermore, as the Court observed in Diorio, supra, "Our 'Code is drafted on the theory that it is ordinarily desirable to start the running of the period of limitation at the time when a crime is committed rather than at the time the offense is detected or the offender discovered.'" 216 N.J. at 620 (quoting Final Report, supra, § 2C:1-6 commentary 2 at 14).

Second, to prove tax evasion under 26 U.S.C.A. § 7201 there must be: "1) the existence of a tax deficiency, 2) an affirmative act constituting an attempt to evade or defeat

17                                                          A-4479-14T2

payment of the tax, and 3) willfulness." McGill, supra, 964 F.2d at 229. By contrast, "[w]illful failure to pay tax under § 7203 contains two elements: 1) failure to pay a tax when due, and 2) willfulness." Ibid. The crime described in Dandy is most analogous to the crime defined by N.J.S.A. 54:52-10, which proscribes filing false or fraudulent returns. We need not decide when a crime under that provision is committed under N.J.S.A. 2C:1-6, and when the limitations period begins to run. The elements of § 7203, not § 7201, are analogous to those of N.J.S.A. 54:52-9(a). Section 7203 covers willful failure to file, supply information or pay tax, stating it is a misdemeanor for

> [a]ny person required under this title to pay any estimated tax or tax, or required by this title or by regulations made under authority thereof to make a return, keep any records, or supply any information, who willfully fails to pay such estimated tax or tax, make such return, keep such records, or supply such information, at the time or times required by law or regulations . . . .
>
> [26 U.S.C.A. § 7203.]

Federal cases applying § 7203 support our interpretation of N.J.S.A. 54:52-9(a). In United States v. Sams, 865 F.2d 713, 714 (6th Cir. 1988), a taxpayer submitted his federal return without payment, stating he was short of funds and intended to make payment arrangements. After he failed to do so, the

government prosecuted him for willful failure to pay tax under 26 U.S.C.A. § 7203. Ibid. The Sixth Circuit rejected the defendant's contention that the limitations period began, as a matter of law, when the tax return was due. Id. at 715. However, it also rejected the government's contention that it did not run until the tax was actually paid. Ibid. The court held that the crime was complete when willfulness manifested itself, which was a fact issue. Id. at 716.

The court in United States v. Pelose, 538 F.2d 41, 44-45 (2d Cir. 1976), reached a similar conclusion with respect to willful failure to file tax returns under 26 U.S.C.A. § 7203. The court held that the crime would not be complete if the taxpayer failed to file when due because of ill-health or lapse of memory, but would become complete if the taxpayer persisted in non-filing after the illness or other supervening condition passed. Id. at 44-45. See also United States v. Andros, 484 F.2d 531, 532 (9th Cir. 1973) (stating, under 26 U.S.C.A. § 7203, that "[t]he period of limitation begins to run not when the taxes are assessed or when payment is demanded, but rather when the failure to pay the tax become willful -- an essential element of the crime"), overruled on other grounds by United States v. Easterday, 564 F.3d 1004, 1011 (9th Cir. 2009).

In sum, we find no support in federal case law for the State's position. Rather, to the extent 26 U.S.C.A. § 7203 is analogous to N.J.S.A. 54:52-9(a), federal cases support the conclusion that there are just two elements to the New Jersey offense: the failure to pay when due, and required state of mind.

D.

In arguing that it charged defendant with a continuing crime, the State also misplaces reliance on the provisions that authorize the Division to impose fees, interest and penalties on unpaid taxes. See N.J.S.A. 54:49-3. We recognize that interest and penalties accrue monthly on unpaid taxes. See id.; N.J.S.A. 54:49-4 (late filing penalty). Interest is also compounded annually. See N.J.S.A. 54:49-3. While a taxpayer may commit an intentional failure to pay tax on the day the taxes are due — say, April 15, 2008 on 2007 taxes — a taxpayer could not commit the intentional failure to pay interest on the overdue 2007 taxes until the State imposes the interest thereafter.

However, the possibility of an intentional failure to pay subsequently charged interest or fees does not toll the limitations period on the intentional failure to pay the underlying tax, which charge may be a separate offense altogether. The State did not charge defendant with intentional

failure to pay interest, penalties, or fees on his unpaid 2007 taxes — which may well have been timely.

## E.

Based on the foregoing principles, count one of the indictment was time-barred. As the State itself alleged in the indictment, defendant failed to pay his 2007 taxes when due — which was April 15, 2008. According to the indictment, defendant did so, beginning July 8, 2008, with the intent to evade, avoid or otherwise not make timely payment. Defendant's subsequent empty promises to pay did not toll the limitations period. Based on the State's allegations, which we accept as true for purposes of the motion, the crime was committed, under N.J.S.A. 2C:1-6, no later than July 8, 2008.

Inasmuch as we reverse the trial court's denial of the motion to dismiss count one, we remand for further proceedings as to count two of the indictment, which the State dismissed only as part of the defendant's conditional plea to count one.

## III.

Finally, defendant's PTI appeal lacks sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(2). The prosecutor's rejection of defendant's application was not a patent and gross abuse of discretion in view of the circumstances. See State v. K.S., 220 N.J. 190, 200 (2015).

These included defendant's previous conviction in 1997 of a significant theft for which he was required to make restitution of $220,500, and serve a five-year probationary term (conditioned on ninety days in jail) that presumably ended just five years before defendant's failure to pay tax. Defendant's claimed inability to pay any 2007 tax was belied by his substantial earnings in 2007 and his decision to purchase a $1.2 million home in February 2008, rather than set aside funds for taxes. We do not minimize defendant's personal tragedy — the illness and passing of his wife — and his personal economic reversals, but these later events did not excuse his failure to pay tax on his 2007 income when due.

Reversed as to the denial of the motion to dismiss count one. Affirmed as to the denial of PTI. Remanded for further proceedings as to count two.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4479-14T2