NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-2407-24
              A-2408-24

STATE OF NEW JERSEY,

    Plaintiff-Appellant,

v.

JAHMERE GLOVER,

    Defendant-Respondent.

_____

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JAHMERE GLOVER,

    Defendant-Appellant.

_____

**APPROVED FOR PUBLICATION**

**March 19, 2026**

**APPELLATE DIVISION**

Argued January 6, 2026 – Decided March 19, 2026

Before Judges Gilson, Firko, and Perez Friscia.

On appeal from an interlocutory order of the Superior
Court of New Jersey, Law Division, Hudson County,
Indictment No. 22-07-0867.

Khyzar Hussain, Special Deputy Attorney General/ Acting Assistant Prosecutor, argued the cause for appellant in A-2407-24 and respondent in A-2408-24 (Wayne Mello, Acting Hudson County Prosecutor, attorney; Khyzar Hussain, of counsel and on the brief).

Lucas B. Slevin, Assistant Deputy Public Defender, argued the cause for appellant in A-2408-24 and respondent in A-2407-24 (Jennifer N. Sellitti, Public Defender, attorney; Lucas B. Slevin, of counsel and on the briefs).

Marie V. Cepeda Mekosh, Deputy Attorney General, argued the cause for amicus curiae Attorney General of New Jersey (Matthew J. Platkin, Attorney General, attorney; Stephen Ehrlich, Deputy Solicitor General, of counsel; Marie V. Cepeda Mekosh, on the brief).

The opinion of the court was delivered by

GILSON, P.J.A.D.

Defendant Jahmere Glover was indicted for three crimes: second-degree possession of a weapon for an unlawful purpose, in violation of N.J.S.A. 2C:39-4(a)(1) (count one); second-degree unlawful possession of a handgun without a permit, in violation of N.J.S.A. 2C:39-5(b)(1) (count two); and fourth-degree possession of a handgun while under the age of twenty-one, in violation of N.J.S.A. 2C:58-6.1 (count three).

Defendant moved to dismiss counts two and three, contending that those charges violated his right to bear arms under the Second and Fourteenth

2

Amendments of the United States Constitution. The trial court denied the motion as to count two but granted it as to count three. On leave granted, defendant appeals from the portion of the order denying the dismissal of count two, and the State appeals from the portion of the order dismissing count three.

We have previously held that a defendant who does not apply for a permit to carry a handgun lacks standing to challenge a criminal charge of possession of a handgun without a permit. State v. Wade, 476 N.J. Super. 490, 495-96, 511 (App. Div. 2023), leave to appeal denied, 255 N.J. 492 (2023). Because defendant did not apply for a permit, our decision in Wade controls. We therefore affirm the portion of the order that denied defendant's motion to dismiss count two.

Concerning count three, we hold defendant does have standing to challenge that count because the lack of a permit is not an element of the charge. Instead, to convict defendant on count three, the State must prove that defendant possessed a handgun when he was under the age of twenty-one. We also hold that New Jersey's statute prohibiting people under the age of twenty-one from possessing a handgun except in defined circumstances is constitutional because the statute is consistent with our Nation's "historical tradition of firearm regulation." United States v. Rahimi, 602 U.S. 680, 691 (2024) (quoting New

3

York State Rifle & Pistol Ass'n, Inc. v. Bruen, 597 U.S. 1, 17 (2022)). Therefore, we reverse the portion of the order that dismissed count three and remand with direction to reinstate count three.

I.

Defendant moved to dismiss two counts of the indictment. Accordingly, for purposes of these consolidated appeals, we accept the facts alleged by the State. See Wade, 476 N.J. Super. at 496; State v. Cobbs, 451 N.J. Super. 1, 5 (App. Div. 2017).[1]

On June 3, 2021, officers from the Jersey City Police Department were conducting surveillance on city streets. During their surveillance, officers observed five men standing by two parked vehicles: a Ford Taurus and a Dodge Charger. One of the men had a bulge in his waistband, which the police believed was a gun. The police, however, lost sight of the bulge when the five men began talking.

---

[1] Specifically, we take the facts from the affidavit of probable cause submitted in support of the warrant complaints against defendant and from the facts relied on by the trial court. Those are the documents defendant and the State submitted in support of their appeals.

A-2407-24

The police then saw one man put on a mask, and he and three other men got into the Taurus. The fifth man, later identified as defendant, got into the Charger by himself and drove off.

Police suspected that the men were planning to conduct a shooting. Accordingly, police officers stopped the Charger and removed defendant from the vehicle. An officer then observed a gun handle sticking out of a bag that was in the center console of the Charger. Defendant, who was then nineteen years old, was arrested.

Two other men were also arrested. Thereafter, defendant and his two co-defendants were indicted for ten crimes, with counts one, two, and three alleged against defendant. In March 2023, defendant moved to dismiss counts two and three of the indictment. He argued that the gun permit and age restriction statutes violated his Second Amendment right to carry a handgun in public places.

The issues were briefed and the trial court heard oral argument. On February 28, 2025, the trial court issued an order, supported by a written opinion. The court determined that defendant lacked standing to challenge the gun permit charge consistent with our decision in Wade and denied the motion to dismiss count two.

5

Addressing count three, the trial court held that defendant had standing to challenge the charge of possession of a handgun by a person under the age of twenty-one. The court then reviewed the United States Supreme Court decisions in <u>Bruen</u> and <u>Rahimi</u>, as well as several decisions by federal courts of appeal. After summarizing those cases, the trial court reasoned the State had failed to show New Jersey's age restriction on possession of a handgun was consistent with our Nation's historical tradition of firearm regulation. Consequently, the trial court dismissed count three as unconstitutional.

Almost simultaneously, defendant and the State moved for leave to appeal from the trial court's interlocutory order. We granted both motions and consolidated the appeals. We also granted the New Jersey Attorney General (the Attorney General) leave to file an amicus brief in support of the State's position.

II.

On appeal, defendant argues the trial court erred in not dismissing count two because he had standing to challenge that count and the possession of a handgun without a permit statute violated his right under the Second Amendment. He articulates his contentions as follows:

> POINT I – THIS COURT SHOULD REVERSE THE DENIAL OF DEFENDANT'S MOTION TO DISMISS COUNT TWO BECAUSE: (A) THE COURT ERRED IN FINDING THAT DEFENDANT LACKED

6

STANDING TO CHALLENGE COUNT TWO; AND (B) THE STATE FAILED TO MEET ITS BURDEN UNDER [BRUEN] OF JUSTIFYING NEW JERSEY'S PROHIBITION ON PUBLICLY CARRYING A HANDGUN WHILE UNDER THE AGE OF TWENTY-ONE.

    A.    Defendant Has Standing To Challenge The Constitutionality Of His Prosecution Under Count Two.

        1.    Defendant has standing because he satisfied the futility exception to the submission requirement.

        2.    Defendant has standing because he argued that the age requirement is facially void.

    B.    Dismissal Of Count Two Is Required Because The State Failed To Meet Its Burden Under [Bruen] Of Justifying The Firearm Regulation Upon Which Defendant's Prosecution Under Count Two Is Based.

The State and the Attorney General disagree with defendant's arguments. They contend that defendant lacks standing to challenge the second-degree charge of possession of a handgun without a permit.

In its appeal, the State contends that we should reverse the part of the order dismissing count three because the age restriction statute is constitutional. In its own words, the State asserts: "THIS COURT SHOULD REVERSE THE

7

TRIAL COURT'S ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COUNT THREE."

The Attorney General supports the State's position arguing that restrictions on firearm possession by individuals younger than twenty-one years of age are consistent with the restrictions that existed when the Second Amendment was adopted in 1791. The Attorney General also points out that the Founding era's allowance of age restrictions is reinforced and confirmed by the age restriction statutes broadly adopted in the nineteenth century.

III.

It is well-established that a grand jury indictment is presumptively valid. State v. Feliciano, 224 N.J. 351, 380 (2016); State v. Francis, 191 N.J. 571, 587 (2007). "[A] court should dismiss [an] indictment 'only on the clearest and plainest ground, and only when the indictment is manifestly deficient or palpably defective.'" State v. Bell, 241 N.J. 552, 560 (2020) (quoting State v. Twiggs, 233 N.J. 513, 531-32 (2018)).

Appellate courts "ordinarily review the dismissal of an indictment under an abuse of discretion standard." State v. Thompson, 250 N.J. 556, 572 (2022). "When the decision to dismiss relies on a purely legal question, however, we review that determination de novo." Ibid. (quoting Twiggs, 233 N.J. at 532).

A-2407-24

The issues presented in these appeals are questions of law and involve interpreting the Constitution as applied to two New Jersey criminal statutes. Thus, we review those issues de novo. See State v. S.S., 229 N.J. 360, 380 (2017); Twiggs, 233 N.J. at 532.

IV.

The Second Amendment to the United States Constitution states: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. The Amendment secures a pre-existing right held by "the people" that is "exercised individually and belongs to all Americans." District of Columbia v. Heller, 554 U.S. 570, 580-81 (2008). The Second Amendment guarantees Americans the right to "have weapons" and to carry them "outside of an organized militia." Id. at 582, 584.

"Like most rights, the right secured by the Second Amendment is not unlimited." Id. at 626. At and since the adoption of the Second Amendment in 1791, state laws have regulated arms-bearing conduct in many ways, including prohibiting "carrying concealed firearms," "gun use by drunken New Year's Eve revelers," and bans on "'dangerous and unusual weapons.'" Rahimi, 602 U.S. at 691 (quoting Heller, 554 U.S. at 626-27).

The United States Supreme Court has repeatedly held "[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them." Bruen, 597 U.S. at 34 (emphasis omitted) (quoting Heller, 554 U.S. at 634-35). To ascertain that understanding, the Court has directed courts to examine our Nation's "'historical tradition of firearm regulation' to help delineate the contours" of the Second Amendment right. Rahimi, 602 U.S. at 691 (quoting Bruen, 597 U.S. at 17). So, the Court has explained:

> [T]he appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition. A court must ascertain whether the new law is "relevantly similar" to laws that our tradition is understood to permit, "apply[ing] faithfully the balance struck by the founding generation to modern circumstances."
>
> [Rahimi, 602 U.S. at 692 (second alteration in original) (citation omitted) (quoting Bruen, 597 U.S. at 29).]

The validity of a state's regulation of handguns is determined under a two-step approach adopted in Bruen:

> We reiterate that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then

10

may a court conclude that the individual's conduct falls outside the Second Amendment's "unqualified command."

[Bruen, 597 U.S. at 24 (quoting Konigsberg v. State Bar of Cal., 366 U.S. 36, 50 n.10 (1961)).]

Using this framework, we analyze counts two and three of defendant's indictment.

V.

Count two of the indictment charged defendant with violating N.J.S.A. 2C:39-5(b)(1). That statute states: "Any person who knowingly has in his possession any handgun . . . without first having obtained a permit to carry the same as provided in N.J.S.[A.] 2C:58-4, is guilty of a crime of the second[-] degree." To obtain a permit to carry a handgun, applicants must follow a two-step process. First, the applicant must apply to the relevant law enforcement officials, which are the chief of police in municipalities or the superintendent of the State police. N.J.S.A. 2C:58-4(c).

Next, the applicant must satisfy several criteria. See N.J.S.A. 2C:58-4; N.J.S.A. 2C:58-3(c); N.J.A.C. 13:54-2.1 to -2.2. To qualify:

[A]n applicant must "not [be] subject to any of the disabilities set forth in [N.J.S.A. 2C:58-3(c)]," which consider the applicant's age, mental and physical health, criminal history, and potential danger to public safety. N.J.S.A. 2C:58-4(c). The applicant must also

11

demonstrate "familiarity with the safe handling and use of handguns," evidenced by certified completion of a training course, submission of scores, or passage of a test.  N.J.S.A. 2C:58-4(c); see also N.J.A.C. 13:54-2.4(b) and (c).

[Wade, 476 N.J. Super. at 504 (alterations in original) (citation omitted).]

The age requirement in N.J.S.A. 2C:58-3(c) provides that an applicant must be at least twenty-one years old to be granted a handgun permit.  N.J.S.A. 2C:58-3(c)(4).  Additional requirements include that the applicant:  has no juvenile adjudications for unlawful use of a weapon; is not the subject of a domestic violence restraining order; has not violated certain types of court orders; has not been committed due to mental health issues; is not a fugitive or the subject of an open warrant; and has complied with liability insurance requirements.  See N.J.S.A. 2C:58-3(c)(6), (7), (10)-(15); N.J.S.A. 2C:58-4(d)(4); N.J.S.A. 2C:58-4.3.

In Wade, we explained:

A defendant may raise a defense that the crime charged in an indictment or accusation "is based on a statute or regulation . . . which is unconstitutional or invalid in whole or in part."  R. 3:10-2(d).  To make that challenge, however, the defendant must have standing to raise the constitutional objection.  State v. Saunders, 75 N.J. 200, 208-09 (1997).  Accordingly, the defendant "must show sufficient injury before his [or her challenge] will be heard."  State v. Varona, 242 N.J.

12

Super. 474, 487 (App. Div. 1990). "Th[is] rule limits a criminal defendant to constitutional claims related to his [or her] own conduct [and] rests on the principle that legislative acts are presumptively valid and will not be overturned on the basis of hypothetical cases not actually before the court." Saunders, 75 N.J. at 208-09.

[Wade, 476 N.J. Super. at 505 (omission and alterations in original).]

We then explained that to establish standing to challenge an alleged unconstitutional gun-permit statute, the challenger must have applied for a permit or license under the statute. Ibid. We recognized that there was a limited exception if the challenger can "make a substantial showing that submitting to the government policy would [have been] futile." Id. at 506 (alteration in original) (quoting Kendrick v. Bruck, 586 F. Supp. 3d 300, 308 (D.N.J. 2022)). So, in Wade we concluded that neither defendant in that matter established futility because they did not make a substantial showing that they would have been granted a handgun carry permit but for the justifiable need requirement, which was being challenged in Wade. Id. at 506-07.[2]

---

[2]   In December 2022, following the decision in Bruen, the New Jersey Legislature amended the gun-permitting statutes to eliminate the justifiable need requirement and to revise other requirements. See L. 2002, c. 131. The Legislature did not change the restrictions on the purchase and possession of handguns by persons under the age of twenty-one. Ibid.

A-2407-24

We reach the same conclusion in this matter. Defendant does not dispute that he did not apply for a permit. Instead, he argues that it would have been futile because he was under the age of twenty-one. Defendant also argues that in Wade we misconstrued federal law regarding futility. We disagree.

A fundamental theme of Second Amendment precedent is that it protects law-abiding adults to possess firearms for self-defense. See, e.g., Bruen, 597 U.S. at 8-9 (explaining that "[i]n [Heller and McDonald], we recognized that the Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun . . . for self-defense"); United States v. Duarte, 137 F.4th 743, 751 (9th Cir. 2025) (quoting Bruen on this point); see also Bruen, 597 U.S. at 79 (Kavanaugh, J., concurring) (explaining "the Court's decision [in Bruen] does not prohibit States from imposing licensing requirements for carrying a handgun for self-defense"). Defendant cannot, therefore, rely on the concept of futility when he cannot establish that even if his age was not considered he would have received a permit to carry a gun.[3]

_____

[3] The United States Supreme Court has denied certiorari to challenge a Hawaii gun permit law where the Hawaii Supreme Court held that the defendant lacked standing to challenge the statue because he had not applied for a permit. Wilson v. Hawaii, 604 U.S. ___, 145 S. Ct. 18 (2024); State v. Wilson, 543 P.3d 440, 444-45 (Haw. 2024). In denying certiorari, three justices questioned whether states should require defendants to apply for a permit to have standing to

14

Moreover, we will not presume futility because defendant did not meet the age requirement. As we will discuss, New Jersey's age requirement is consistent with our Nation's historical tradition of firearms regulations. At a minimum, to be law-abiding and to have standing, defendant should have applied for the permit and challenged the age restriction if he was denied a permit only because of his age.

VI.

Next, we address count three, the charge that defendant violated N.J.S.A. 2C:58-6.1. That statute imposes restrictions on persons under the ages of eighteen and twenty-one. N.J.S.A. 2C:58-6.1(a) to (b). Concerning persons under the age of twenty-one, the statute restricts their right to purchase or possess "a handgun" except in defined circumstances. Ibid. In contrast, persons under the age of eighteen are prohibited from purchasing or possessing "firearm[s]." Ibid.

---

challenge the constitutionality of the permit law. Ibid. While we acknowledge that view, it does not represent the view of the majority of the United States Supreme Court nor is it binding precedent. See Teague v. Lane, 489 U.S. 288, 296 (1989) (explaining that an opinion accompanying the denial of certiorari is not binding precedent). Moreover, that view does not acknowledge the parts of gun permit laws that are constitutional and consistent with the Nation's historical tradition.

A-2407-24

So, relevant to people under the age of twenty-one, the statute states "no person under the age of 21 years shall purchase, barter[,] or otherwise acquire a handgun, unless the person is authorized to possess the handgun in connection with the performance of official duties under the provisions of N.J.S.[A.] 2C:39-6,"[4] N.J.S.A. 2C:58-6.1(a); and "no person under the age of 21 years shall possess, carry, fire[,] or use a handgun except under the following circumstances." N.J.S.A. 2C:58-6.1(b). The exceptions allow the possession and use of a handgun (1) in the presence or direct supervision of a parent, guardian, or person "who holds a permit to carry a handgun or a firearms purchaser identification card"; (2) "[f]or the purpose of military drill under the auspices of a legally recognized military organization and under competent supervision"; (3) "[f]or the purpose of competition, target practice, instruction, and training" at an approved firing range and under "competent supervision"; or (4) "[f]or the purpose of hunting" with a valid hunting license and with safety training. N.J.S.A. 2C:58-6.1(b)(1) to (4).

The indictment does not expressly state whether defendant was charged under subsection (a) or (b) of N.J.S.A. 2C:58-6.1. The indictment does,

---

[4] The exempted official duties include serving in the Armed Forces of the United States, the National Guard, or a recognized law enforcement agency. N.J.S.A. 2C:39-6(a)(1)-(4).

however, use the language from subsection (a) by alleging defendant "while being under the age of 21, did purchase, barter, or otherwise acquire a handgun."

In evaluating the charge against defendant in count three, we must determine two threshold issues: (1) whether defendant has standing to challenge count three; and (2) whether defendant at the age of nineteen is included in "the people" within the meaning of the Second Amendment. If defendant does have standing and protection under the Second Amendment, we must then determine a third issue: whether N.J.S.A. 2C:58-6.1 is consistent with our Nation's historical tradition of firearm regulation.

1.    Defendant's Standing.

Unlike the charge in count two, the charge in count three does not require the State to show that defendant did not have a permit to possess a gun in a public place. In other words, a violation of N.J.S.A. 2C:58-6.1 does not include the element that defendant did not have a gun permit.

Accordingly, our holding and reasoning in Wade do not control. To challenge count three, defendant does not need to meet the submission requirement because he is not being prosecuted for failing to obtain a permit. Instead, he is being prosecuted for purchasing or possessing a handgun. See N.J.S.A. 2C:58-6.1.

New Jersey courts typically construe standing "liberally," and "[u]nlike the federal system, . . . does not restrict [] courts to the rigid 'case or controversy' requirement" for Article III standing. State v. Lavrik, 472 N.J. Super. 192, 204 (App. Div. 2022); see also Saunders, 75 N.J. at 208-09 (explaining standing is required to challenge a criminal statute). Thus, generally, "standing [] will be found where the party seeking relief has a sufficient personal stake in the controversy to assure adverseness, and the controversy is capable of resolution by the court." Lavrik, 472 N.J. Super. at 204.

In the context of a criminal case, standing is typically limited to constitutional claims related to a defendant's "own conduct." Saunders, 75 N.J. at 208-09. A defendant must show sufficient injury before his or her challenge will be heard. Varona, 242 N.J. Super. at 487. That is, the defendant must demonstrate that he or she suffered a "cognizable harm," from "enforcement of the statute." Ibid.

Here, defendant challenges a criminal statute he has been charged with violating. This is a sufficient "injury" to confer standing on defendant to bring his constitutional challenge as to count three.

2.    The People Protected by the Second Amendment.

Courts have recently analyzed age restrictions on guns and have debated whether people who are between the ages of eighteen and twenty are currently part of "the people" protected by the Second Amendment. Compare Lara v. Comm'r Pa. State Police, 125 F.4th 428, 436-38 (3d Cir. 2025) (holding that eighteen- to twenty-year-olds are "presumptively among 'the people' to whom Second Amendment rights extend"), Reese v. Bureau of Alcohol, Tobacco, Firearms, and Explosives, 127 F.4th 583, 595 (5th Cir. 2025) (explaining that eighteen- to twenty-year-olds are "indeed part of 'the people' for Second Amendment purposes"), and Worth v. Jacobson, 108 F.4th 677, 692 (8th Cir. 2024) (holding eighteen- to twenty-year-olds "are unambiguously members of the people"), with Lara, 125 F.4th at 447-53 (Restrepo, J., dissenting) (analyzing Founding era sources and concluding "the plain text of the Second Amendment [does] not cover individuals under the age of 21").

Currently, New Jersey, along with most States, defines minors as persons under the age of eighteen and treats people who are eighteen years or older as adults. See N.J.S.A. 9:17B-3 (stating "every person 18 or more years of age shall in all other matters and for all other purposes be deemed to be an adult and . . . shall have the same legal capacity to act and the same powers and obligations as a person 21 or more years of age"); United States v. Montenegro-Recinos,

424 F.3d 715, 717 (8th Cir. 2005) (noting that the age of majority is "eighteen years of age in most states"). We are, therefore, convinced that people between the ages of eighteen and twenty are included in "the people" protected by the Second and Fourteenth Amendments.

Having made that determination, however, it is still critical to recognize that people under the age of twenty-one did not have all the rights of people over the age of twenty-one in 1791. Courts have uniformly accepted that in 1791, those under the age of twenty-one were considered minors. See, e.g., Nat'l Rifle Ass'n v. Bondi, 133 F.4th 1108, 1117-22 (11th Cir. 2025) (undertaking a comprehensive survey of Founding era and nineteenth century law and concluding "for much of the first two centuries of our [N]ation, our law limited the rights of individuals under the age of 21"); Lara, 125 F.4th at 436-37 (citing various sources of law and coming to the same conclusion); Rocky Mountain Gun Owners v. Polis, 121 F.4th 96, 124-25 (10th Cir. 2024) (same).

Accordingly, we turn to the analysis of whether placing certain restrictions on people under the age of twenty-one from purchasing or possessing a handgun is consistent with our Nation's historical tradition of firearm regulation.

3.     The Nation's Historical Tradition of Firearm Regulation.

The United States Supreme Court has not addressed age restrictions on the purchase or possession of handguns. To date, no one has challenged a state's right to limit minors under the age of eighteen from purchasing or possessing firearms. Defendant in this matter contends that because he was nineteen years of age when he was arrested, he should be treated like an adult and New Jersey's age restriction on his right to purchase or possess a handgun is unconstitutional.

Several federal courts of appeal have split on the question of whether age restrictions on individuals between the ages of eighteen and twenty are constitutional. Compare Bondi, 133 F.4th at 1117-27, 1130 (relying on Founding era common-law and various nineteenth century laws to hold that age restrictions on the purchasing of firearms do "not violate the Second and Fourteenth Amendments because [they are] consistent with our historical tradition of firearm regulation"), McCoy v. Bureau of Alcohol, Tobacco, Firearms and Explosives, 140 F.4th 568, 575-80 (4th Cir. 2025) (looking to many of the same historical sources as Bondi and coming to the same conclusion), and Polis, 121 F.4th at 118-28 (holding that an age restriction on a minor's ability to bear arms is "presumptively lawful"), with Lara, 125 F.4th at 438-45 (finding no historical analogue for a law restricting eighteen- to twenty-year-olds' access to firearms and thus finding a Pennsylvania law

21

inconsistent "with the principles that underpin [F]ounding[]era firearm regulations"), Reese, 127 F.4th at 586, 595-600 (striking down a federal law that prohibited "Federal Firearms Licensees from selling handguns to eighteen-to-twenty-year-old[s]," as "unconstitutional in light of our Nation's tradition of firearm regulation"), and Worth, 108 F.4th at 683, 692-98 (invalidating a provision of Minnesota's permit-to-carry statute which "require[ed] applicants to be at least 21 years old" as unconstitutional because the state failed to demonstrate such a restriction "is within this [N]ation's historical tradition of firearm regulation").[5]

---

[5] Several state courts have also address age-based gun restrictions. See, e.g., Cocking v. State, 567 P.3d 348, 351-53 (Nev. 2025) (declining to address whether an age-based restriction within Nevada's concealed carry licensing scheme was "consistent with the [N]ation's historical tradition" reasoning that the right to carry a concealed gun was not protected under the plain text of the Second Amendment); Commonwealth v. Williams, 341 A.3d 144, 150, 154-57 (Pa. Super. Ct. 2025) (upholding Pennsylvania's twenty-one-year-old minimum age for concealed carry permits, relying in part on Bondi and reasoning that those under twenty-one had historically been disarmed at the Founding because they were "unable to responsibly bear arms" and were too "dangerous"); People v. Thompson, 264 N.E.3d 24, 539-43 (Ill. App. Ct. 2024) (relying on pre-Bruen Illinois Supreme Court precedent and holding because eighteen- to twenty-year-olds were "entirely subsumed under the authority of their parents at the [F]ounding," an age-based parental consent requirement to obtain a permit did not violate the Second Amendment). This list of other states' cases is not exhaustive.

A-2407-24

Those courts reviewed who was treated as a minor in 1791, the gun regulations that existed in and around 1791, and the gun restrictions that existed in the nineteenth century. In that regard, those courts analyzed the historic treatment of people under the age of twenty-one as minors, as well as the laws in the second half of the nineteenth century that placed restrictions on the purchase and possession of guns by people under the age of twenty-one. See Bondi, 133 F.4th at 1117-27; McCoy, 140 F.4th at 575-80; Lara, 125 F.4th at 438-45; Reese, 127 F.4th at 595-600; Worth, 108 F.4th at 692-98. In this matter, the State and Attorney General rely on these same historical sources in arguing that N.J.S.A. 2C:58-6.1 is constitutional.

In the Founding era, minors did not have the same rights as adults. Accordingly, they were effectively controlled by their parents or guardians. Thus, courts have looked to the common law and reasoned that in 1791, persons under twenty-one years of age did not have access to firearms except under the supervision of their parents or guardians. Bondi, 133 F.4th at 1117-20 (examining various historical sources and concluding (1) "[d]uring the Founding era, minors generally lacked unrestricted access to firearms," and (2) because of this, "minors needed parental consent to access firearms"); see also Lara, 125 F.4th at 448-51 (Restrepo, J., dissenting) (analyzing similar sources and

23

concluding that during the Founding era, people under twenty-one "had few independent rights," and that often, "any right [a person under twenty-one] may have had to bear arms could be abrogated in its entirety at the pleasure of the[ir] parent").

In considering parental authority, courts have also looked at restrictions that universities placed on students' possession of firearms. See, e.g., Bondi, 133 F.4th at 1120-21 (reviewing Founding era university regulations and finding that universities acting in loco parentis "commonly restricted firearm access both on and off campus"). Those courts have reasoned that universities effectively stood in the roles of guardians, and restricted students, including those under the age of twenty-one from possessing or carrying firearms. See Reese, 127 F.4th at 596-98 (noting that "universities had heightened authority over student conduct," assuming the legal role of the parent or guardian); Worth, 108 F.4th at 695 (recognizing Founding era universities' rules restricted students from possessing guns on campus and noted universities' guardianship authority).

In defining the meaning of the Second Amendment, the United States Supreme Court has consistently explained that "[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them." Heller, 554 U.S. at 634-35; Bruen, 597 U.S. at 34 (quoting Heller, 554

24

U.S. at 634-35); <u>Rahimi</u>, 602 U.S. at 709 (Gorsuch, J., concurring) (quoting <u>Heller</u>, 554 U.S. at 634-35). Accordingly, no matter how one debates whether there were analogous firearm restrictions in 1791, a fundamental consideration is whether the people who adopted the Second Amendment believed that states could regulate how persons under the age of twenty-one could purchase and possess firearms.

From 1791 and well into the twenty-first century, our Nation allowed states to define the age of majority. <u>See</u> <u>Lara</u>, 125 F.4th at 437 (citing numerous sources, including William Blackstone, <u>Commentaries on the Laws of England</u> 451 (Oxford, Clarendon Press 1765), and stating that "[f]rom before the [F]ounding and through Reconstruction, those under the age of 21 were considered minors").

For example, states had the right to set age limits on the fundamental right to vote. Indeed, it took a constitutional amendment in 1971 to establish a nationwide right to vote at the age of eighteen. <u>See</u> <u>U.S. Const.</u> amend. XXVI.

Consequently, our Nation has a long-established tradition of allowing states to define the age of majority and place restrictions on people under the age of twenty-one. Therefore, the people who adopted the Second Amendment

25

would have recognized states could place restrictions on the purchase and use of guns by people under twenty-one years of age.

This position is further supported by the United States Supreme Court's most recent pronouncements in Rahimi, explaining that "some courts have misunderstood the methodology of our recent Second Amendment cases. Those precedents were not meant to suggest a law trapped in amber." Rahimi, 602 U.S. at 691. The Court went on to explain that "the Second Amendment permits more than just those regulations identical to ones that could be found in 1791." Id. at 691-92. The Court also clarified "the appropriate analysis involves considering whether the challenged regulation is consistent with the principles that underpin our regulatory tradition." Id. at 692 (citing Bruen, 597 U.S. at 26-31).

In that regard, the United States Supreme Court has also explained that the "[w]hy and how the regulation burdens the right are central to this inquiry." Ibid. (citing Bruen, 597 U.S. at 29). The why and how of New Jersey's age restriction on persons under the age of twenty-one from purchasing or possessing handguns are consistent with our Nation's historical tradition of firearms regulation.

A-2407-24

The Attorney General has pointed out that numerous studies have demonstrated the impulsive nature of persons under the age of twenty-one. See Bondi, 133 F.4th at 1150 (citing several sources including Mariam Arain et al., Maturation of the Adolescent Brain, 9 NEUROPSYCHIATRIC DISEASE & TREATMENT 449, 499 (2013)); see also Lara, 130 F.4th at 69 (Krause, J., dissenting) (collecting sources and noting "[individuals] under 21 are uniquely predisposed to impulsive, reckless behavior because their brains have not yet fully developed").

The Attorney General cites those studies in support of why the New Jersey Legislature prohibits persons under the age of twenty-one from purchasing and possessing firearms in public places. Indeed, the New Jersey Supreme Court has recognized that the New Jersey Legislature has restricted minors' access to guns because firearms are particularly dangerous in the hands of minors. See Mazzilli v. Segler, 13 N.J. 296, 300 (1953) (noting "[f]irearms have been the subject of legislative control, which indicates a recognition of damage which may ensue from the use of a dangerous instrument, especially in incompetent or unqualified hands").

Unfortunately, there are multiple examples of people under the age of twenty-one using firearms to kill and maim hundreds of people, including

27

children.  See Amanda Onion, et al., Teen gunmen kill 13 at Columbine High School, History (May 27, 2025), https://www.history.com/this-day-in-history/april-20/a-massacre-at-columbine-high-school; Marjory Stoneman Douglas High Sch. Pub. Safety Comm'n, Initial Report 262-64 (2019); Susan Candiotti & Sarah Aarthurn, Police: 20 children among 26 victims of Connecticut school shooting, CNN (Dec. 15, 2012), https://www.cnn.com/2012/12/14/us/connecticut-school-shooting; Carma Hassan & Steve Almasy, Four teens charged with attempted first-degree murder after shooting in Colorado high school parking lot, CNN (Dec. 7, 2021), https://www.cnn.com/2021/11/30/us/colorado-high-school-shooting-attempted-murder-charges.

Thus, guarding against the impulsive behavior of people under the age of twenty-one is consistent with how people in 1791 viewed all people under twenty-one as minors.  In other words, in 1791 people under twenty-one were subject to restrictions that did not apply to persons over the age of twenty-one and the Founders would have accepted that the States can restrict gun use by minors for reasons of public safety.  Accordingly, New Jersey's age restrictions on the purchase and possession of handguns are consistent with our Nation's historical tradition of restricting minors' access to guns for public safety.

28

How N.J.S.A. 2C:58-6.1 burdens the right to purchase and possess handguns by persons under the age of twenty-one is also consistent with our Nation's historical tradition of firearms regulation. The cases that have addressed age restrictions on gun purchase and possession have focused on two recognized uses of firearms by persons under the age of twenty-one in the Founding era. Those uses included serving in the militia and as permitted by a parent or guardian. See Bondi, 133 F.4th at 1120 (recognizing the vast majority of states required parents to provide minors with firearms for militia service); Accord McCoy, 140 F.4th at 578 (noting that minors had access to firearms owned by their families); see also Reese, 127 F.4th at 596 (acknowledging examples of "regulations and practices from near the [F]ounding that asserted parental or supervisory authority over arms-bearing by eighteen-to-twenty-year-olds"). Other cases discuss hunting as another recognized use.[6]

---

[6] While the cases referencing hunting have discussed that use in the context of reconstruction-era statutes, using guns for hunting was also an accepted use in the Founding era. See Polis, 121 F.4th at 141-42 (McHugh, J., concurring) (noting "[b]efore 1900, at least twenty jurisdictions made it unlawful to sell handguns and other deadly weapons to minors," but five of these laws had exceptions for hunting or parental consent); Bondi, 133 F.4th at 1141 (Rosenbaum, J., concurring) (discussing a Tennessee reconstruction-era statute restricting sale of firearms to a minor but providing an exception for hunting); Bondi, 133 F.4th at 1176 (Brasher, J., dissenting) (explaining "[a]t the

New Jersey's age restriction statute permits those uses, as well as others. New Jersey law expressly allows persons between the ages of eighteen and twenty to possess and use guns if they are in the military or if they are in "the actual presence or under the direct supervision of" a parent or guardian. N.J.S.A. 2C:39-6(a)(1) and N.J.S.A. 2C:58-6.1(b)(1). N.J.S.A. 2C:58-6.1 also allows persons between the ages of eighteen and twenty to use guns for purposes of hunting, military drill, competition, target practice, instruction, and training when done under appropriate supervision. See N.J.S.A. 2C:58-6.1(b)(1)-(4). In short, all the recognized uses of a firearm by someone ages eighteen to twenty that existed in 1791, are permitted under N.J.S.A. 2C:58-6.1. Thus, those exceptions align with how the Founders in 1791 treated people under the age of twenty-one.

What N.J.S.A. 2C:58-6.1 restricts is the unsupervised purchase and possession of a handgun in public. Those limited restrictions would have been recognized as the type of restrictions a state could impose on people under the age of twenty-one in 1791 consistent with the Second Amendment. See Bondi, 133 F.4th at 1123 (holding an age restriction statute constitutional because it did

Founding," a Florida law banning "young adults from purchasing . . . rifles and shotguns used for hunting" would have been "unimaginable").

not "burden[] the right [any] more than [] historical restrictions because it" preserved exceptions for minors' use of firearms in certain contexts); see also id. at 1125 (explaining that the Second Amendment does not "turn[] on an evolving standard of adulthood that is divorced from the text of the Amendment and from our regulatory tradition").

The Founding era's understanding is reflected in the laws enacted in the nineteenth century. As the United States Court of Appeals for the Eleventh Circuit has explained: "The laws from the mid-to-late [nineteenth] century make explicit what was implicit at the [F]ounding: laws may regulate the purchase of firearms by minors. To that end, eighteen jurisdictions expressly prohibited the sale of certain arms to individuals under the age of twenty-one and attached criminal penalties to those prohibitions." Id. at 1124 (citing to the various state statutes).

In relying on these laws from the mid-to-late nineteenth century, we are following the directions of the United States Supreme Court as explained in Rahimi and Bruen. Rahimi, 602 U.S. at 696 (citing Bruen, 597 U.S. at 56 n.23) (relying in part on nineteenth century amendments to surety laws to understand what type of restrictions would be accepted as consistent with the Nation's historical tradition of gun regulations); Bruen, 597 U.S. at 64-65 (analyzing

reconstruction-era state public carry laws to support its conclusion there were no historical analogs to New York's proper-cause requirement). See also Lara, 125 F.4th at 441 (explaining "post-ratification history can confirm a court's understanding of Founding[]era public meaning"). In other words, the starting place is the understanding in 1791. That states thereafter regulated the purchase and possession of firearms by people under the age of twenty-one, reflects how people in the Founding era understood those rights.

## VII.

In summary, we affirm the part of the February 28, 2025 order that denied defendant's motion to dismiss count two. We reverse and vacate the part of the order that dismissed count three. Because count three is constitutional we remand with instruction that count three be reinstated.

Affirmed in part, reversed in part, and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

32